Ova Lee IRONS et al., Appellants,

v.

FORT WORTH SAND & GRAVEL COMPANY et al., Appellees.

No. 15643.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 21, 1955.

Rehearing Denied Nov. 25, 1955.

Arthur Lee Moore and J. C. Mount, Fort Worth, for appellants.

Thompson, Walker, Smith & Shannon and K. K. Smith, Jr., Fort Worth, for appellees.

BOYD, Justice.

This suit was filed by Ova Lee Irons, joined by her husband, Vern T. Irons, against Fort Worth Sand & Gravel Company, a corporation, Thomas Gravel Company, a corporation, and M. G. Reves and E. J. Reves, independent executors of the estate of G. P. Reves, deceased, to recover damages for the removal and conversion of sand and gravel from 168 acres of land, and for an accounting.

The land involved was acquired by G. P. Reves during his marriage to Adeen Deason Reves. She died in 1906 without leaving a will. There were born to that union five children, namely, M. G. Reves, Elmo Reves, Maude Reves Davis, and Vera Reves Hudgins, all parties to this suit, and Wylie Edward Reves, who died in 1942 without leaving a will, and who left as his survivors a son, Wylie Preston Reves, and his widow, Edna Reves, who is now the wife of E. F. Miller. After the death of his wife Adeen, G. P. Reves married Nora Austin, and during this marriage four children were born, namely, E. J. Reves, Edna Reves Anderson, Ova Lee Irons, and Alton P. Reves. G. P. Reves died May 9, 1949, leaving a will which appointed M. G. Reves and E. J. Reves independent executors. The will devised specific tracts of land to each of his eight surviving children and to his grandson, Wylie Preston Reves, said tracts constituting all the real property which the testator owned at the time of his death. A subsequent clause of the will, clause 12, is as follows: "It is my intention, will and desire that all gas, oil and mineral rights, also including the production of sand, gravel and ore of all kinds, inure to the benefit of all my children and my said grandchild hereinabove mentioned alike, and that the profits from same be divided equally among them share and share alike, and such oil, gas, sand, gravel and mineral rights are hereby reserved in them share and share alike, and in order to make an equitable settlement with the devisee or devisees on whose land or under which the same is hereinabove divided, it is my will and desire that

the one or ones so damaged, be paid a fair and reasonable price for such lands out of the royalties therefrom, the price and damages thereof to be determined by the Executors hereinafter named."

On May 2, 1950, M. G. Reves and E. J. Reves, as independent executors of the estate of G. P. Reves, executed a sand and gravel lease to Fort Worth Sand & Gravel Company covering the 168 acres involved in this suit. The lease was transferred to Thomas Gravel Company. The royalty was twenty-five cents per cubic yard. On a former appeal, this Court reached the conclusion that the executors were without power to bind Mrs. Irons by such a lease. Irons v. Fort Worth Sand & Gravel Co., Tex.Civ.App., 260 S.W.2d 629, writ refused, n. r. e.

While the instant suit was pending, the two gravel corporations were dissolved, and T. E. Popplewell, J. J. Randol, and L. W. Dunn, the former stockholders in both corporations, and Texas Industries, Incorporated, the ultimate transferee of the assets of both corporations, were made defendants.

The gravel companies, Texas Industries, T. E. Popplewell, J. J. Randol, and L. W. Dunn filed a general denial and certain affirmative defenses, and in the alternative, brought a cross-action against the eight children of G. P. Reves, including Ova Lee Irons, and against Wylie Preston Reves, his grandson, Edna Reves Miller, the mother of Wylie Preston Reves, and M. G. Reves as the guardian of the estate of Wylie Preston Reves. Those defendants alleged that they and the eight children and grandson of G. P. Reves, and the mother of said grandson, Edna Reves Miller, own all the sand and gravel in the 168 acre tract in undivided interests, and sought a partition in kind of the sand and gravel by dividing the surface into shares so that the share of Ova Lee Irons and the share of Wylie Preston Reves and his mother, Edna Reves Miller, could be set aside to each of them, and the shares of all the others, which should include the sand and gravel which had been removed, be set aside to

them without partition as between themselves.

The executors pleaded that Ova Lee Irons had ratified and confirmed the lease and that she was estopped to deny the validity of same, and alleged in the alternative that the sand and gravel should be partitioned in kind.

M. G. Reves, E. J. Reves, Edna Reves Anderson and husband, Maude Reves Davis and husband, Vera Reves Hudgins and husband, and Elmo Reves alleged that Ova Lee Irons was bound by the terms of the lease, and in the alternative they sought a partition in kind of the sand and gravel.

Wylie Preston Reves and Edna Reves Miller answered the cross-action and alleged that the sand and gravel were not susceptible of an equitable partition in kind, and asked recovery from the defendants for their damages for the removal of sand and gravel, and for an accounting.

Alton P. Reves, in his answer to the cross-action, alleged that the sand and gravel were not susceptible of partition in kind.

The jury found that Thomas Gravel Company removed the sand and gravel in good faith believing that it had the right to remove all the sand and gravel in the 168 acres, including the shares of Ova Lee Irons and Wylie Preston Reves; that the sand and gravel were partitionable in kind; and that the reasonable market value of the sand and gravel at the Thomas Gravel Company plant, after having been mined, transported to the plant, and washed, was $1.10 per cubic yard. A decree was entered that Ova Lee Irons take nothing by her suit; that Wylie Preston Reves and Edna Reves Miller take nothing by their cross-action; and that the sand and gravel be partitioned in kind, as of May 2, 1950, as follows: ⅛th to Ova Lee Irons; ⅛th to Wylie Preston Reves and Edna Reves Miller, without division between them; and ⅞ths, including the sand and gravel removed, to Texas Industries, T. E. Popplewell, J. J. Randol and L. W. Dunn. The court found that the other seven

children of G. P. Reves each owned ⅛th of the sand and gravel in the land as of May 2, 1950, subject to the interests of Texas Industries, T. E. Popplewell, J. J. Randol and L. W. Dunn under the lease. Commissioners were appointed to make the partition, and were instructed to arrive at the amount of commercially profitable sand and gravel as of May 2, 1950, by adding 254,166 cubic yards, which it was stipulated had been removed, to the amount now found to be in said land, and to set aside to Ova Lee Irons ⅛th of the total, and to Wylie Preston Reves and Edna Miller ⅛th, and the balance to the other parties, which ⅞ths was to be charged with the amount of sand and gravel theretofore removed. Ova Lee Irons and husband, Edna Reves Miller and husband, Wylie Preston Reves and Alton P. Reves appeal.

By points for reversal, appellants contend: that the court committed fundamental error in decreeing that the sand and gravel as of May 2, 1950, be partitioned in kind; that it was error to decree that Mrs. Irons, Wylie Preston Reves and Mrs. Miller were not entitled to an accounting for the sand and gravel removed; that the jury's finding that the sand and gravel in the land as of May 2, 1950, are now susceptible of an equitable partition in kind is not supported by the evidence; that the jury's finding that Thomas Gravel Company removed the sand and gravel in good faith believing that it had a valid lease as to Ova Lee Irons and Wylie Preston Reves, is not supported by the evidence; and that it was error not to allow Mrs. Irons, Wylie Preston Reves and Mrs. Miller to introduce evidence as to the amount and value of concrete manufactured from the sand and gravel removed.

In our view of the case, the principal question for determination is whether, under the facts of this case, the court was warranted in decreeing a partition of the sand and gravel in kind.

We think the evidence was sufficient to support the jury finding that the sand and gravel are capable of an equitable partition in kind. Without reviewing the evidence in great detail, we note that W. R. Thomas, who had been in the gravel business for twenty-eight years, who has had much experience in testing land for sand and gravel, and who had risen from a common laborer to production superintendent for Fort Worth Sand & Gravel Company and Thomas Gravel Company, testified that he had made tests on the land involved in 1949 and again a few weeks before this case was tried; that ordinarily test holes are made from 200 to 300 feet apart, but this land was tested by drilling the holes 100 feet apart; that he estimated that there was yet in the ground 156,230 cubic yards of sand and gravel that would be as commercially profitable to mine as that which had been removed; that there was nothing about the quality of the remaining sand and gravel, of the nature of the overburden, or its accessibility to roads or markets, that would require a lessee to pay a lesser royalty than was paid for that which had been removed; that estimates of experienced men as to the amount and quality of sand and gravel underground would have an error percentage of three to five per cent. T. E. Popplewell and Earl E. Newman, who testified to long experience in the gravel business, corroborated the testimony of Thomas in many particulars. Popplewell said that the margin of error in estimating the amount and quality of sand and gravel underground was about two per cent; three of the witnesses said that the sand and gravel still in the land would sell as readily as that which had been removed; and two of the witnesses said that 45,000 cubic yards would command as much royalty per cubic yard as several times that number.

Article 6082, R.C.S., reads as follows: "Any joint owner or claimant of any real estate or of any interest therein or of any mineral, coal, petroleum, or gas lands, whether held in fee or by lease or otherwise, may compel a partition thereof between the other joint owners or claimants thereof in the manner provided in this chapter."

Rule 761, Texas Rules of Civil Procedure, is as follows: "The court shall de-

termine before entering the decree of partition whether the property, or any part thereof, is susceptible of partition; and, if the court determines that the whole, or any part of such property is susceptible of partition, then the court for that part of such property held to be susceptible of partition shall enter a decree directing the partition of such real estate, describing the same, to be made in accordance with the respective shares or interests of each of such parties entitled thereto, specify in such decree the share or interest of each party, and shall appoint three or more competent and disinterested persons as commissioners to make such partition in accordance with such decree and the law, a majority of which commissioners may act."

Rule 770, T.R.C.P., reads as follows: "Should the court be of the opinion that a fair and equitable division of the real estate, or any part thereof, cannot be made, it shall order a sale of so much as is incapable of partition, which sale shall be for cash, or upon such other terms as the court may direct, and shall be made as under execution or by private or public sale through a receiver, if the court so order, and the proceeds thereof shall be returned into court and be partitioned among the persons entitled thereto, according to their respective interests."

■ "The law favors a partition in kind, rather than a sale with partition of the proceeds." Henderson v. Chesley, Tex. Civ.App., 273 S.W. 299, 303. "The very purpose of partition is to enable one holding or entitled to hold with others an undivided possession, to sever that possession and right, and thenceforth to hold an exclusive possession of a specific part of the property, which before partition all the co-owners had the equal right to possess." Tieman v. Baker, 63 Tex. 641. It is not the policy of the law to compel an owner to sell his property against his will. 143 A.L.R. 1096.

■ There is no legal bar to the partition of sand and gravel in kind. The prac-

ticalities control. If such partition cannot be made without prejudice to the interests of cotenants, the court will order a sale of the property and a partition of the proceeds. But if an equitable partition in kind can be effected, it will be decreed. Whether the sand and gravel are partitionable in kind is a question of fact.

■ Appellants strongly rely on White v. Smyth, 147 Tex. 272, 214 S.W.2d 967, 5 A.L.R.2d 1348. The mineral in question in that case was rock asphalt. It was owned in common by the parties to the suit, and extensive mining operations had been carried on by White, who owned ⅛th. The asphalt was found in different places in 30,000 acres. The jury found that it was not susceptible of an equitable partition in kind. In view of that finding, which the court held was supported by the evidence, an accounting was decreed. We take the following interesting quotation from the opinion of the Court of Civil Appeals in White v. Smyth, 214 S.W.2d 953, 961, which, although it was perhaps not necessary to a decision of the case, is a clear statement of the law in applicable fact situations: "Assuming a case of a mineral estate partitionable in kind, a cotenant has the right to have the estate partitioned and his portion thereof set aside to him in kind. His substantive rights in and to the property are essentially the same whether he commences mining operations before or after he demands partition. Should he mine prior to a partition his taking of minerals may be regarded as working a partition effective at least as to the minerals actually severed from the ground. These minerals belong absolutely to the mining cotenant. This for the reason that upon subsequent partition that part of the area under which the operating cotenant has mined may be set aside to him, provided, of course, he has not mined more than his proportionate share of the mineral estate. * * *"

In the opinion of the Supreme Court in White v. Smyth, considerable space is devoted to detailing the evidence in support of the jury finding that the rock

asphalt was not susceptible of an equitable partition in kind. That finding seems to be the basis of the holding that the severance of the minerals had not worked a partition, and an accounting was proper. The court distinguished Kirby Lumber Co. v. Temple Lumber Co., 125 Tex. 284, 83 S.W.2d 638, and pointed out that an accounting was not decreed in that case because the timber, the property in controversy, was fairly subject to partition in kind.

We do not construe the expression by the Supreme Court in White v. Smyth, [147 Tex. 272, 214 S.W.2d 973] to the effect that the general rule is that "known mineral lands, because of elements of uncertainty, not resolvable at reasonable cost, are not susceptible of fair division by metes and bounds," to mean that the other rule, namely, that partition of minerals in kind will be decreed when the elements of uncertainty are resolved by competent evidence to the satisfaction of the triers of the facts, is of doubtful validity.

"Notwithstanding the broad language in some of the cases to the effect that known mineral property or interests are by nature not susceptible of partition in kind, particularly in the case of oil and gas, such statements seem to overreach the point and should perhaps be interpreted to mean simply that, as is plainly indicated in other cases, mineral property and interests, under the circumstances usually encountered, generally do not lend themselves to fair partition in kind. The existence abstractly of power on the part of the appropriate court to direct a partition of mineral property or interests in kind has been expressly declared, even with respect to oil and gas; is clearly implied by decisions directing a partition in kind of mineral property or interests in individual instances; and may, indeed, be established by express statutory provision." 143 A.L.R. 1093. If it be a fact that in most cases solid minerals cannot be equitably partitioned in kind, it in no way militates against the application of the doctrine of partition in kind in a proper fact situation.

It seems clear that the refusal of an accounting in Kirby Lumber Co. v. Temple Lumber Co., supra, was based upon the finding that the timber was partitionable in kind after most of it had been removed, and that the decree awarding an accounting in White v. Smyth, supra, was based upon the finding that the rock asphalt was not partitionable in kind.

We believe also that the finding that Thomas Gravel Company removed the sand and gravel in good faith believing that the lease was valid as to Mrs. Irons and Wylie Preston Reves is sufficiently supported by the evidence. Lawyers of the highest professional standing were consulted by the executors and by Fort Worth Sand & Gravel Company in the negotiations for the preparation and the execution of the lease. From an examination of clause 12 of the will, it is not unreasonable for lawyers to conclude that the executors have the implied power to lease the land for sand and gravel development. Lawyers have reached that conclusion, and have maintained it with most persuasive reasoning. It is no evidence of bad faith for laymen or lawyers to fail sometimes to forecast accurately the construction that a court will give a complicated will. Judge Jesse M. Brown, the attorney for the executors, testified that he construed the will to give the executors the power to lease, and that it was not because he doubted that power that he advised the executors to secure ratifications of the lease from all the devisees, but because he thought such a course might obviate later contentions that the executors had made a bad deal. The guardian of Wylie Preston Reves executed a ratification of the lease, although, it now appears, without authorization from the probate court. The president of both gravel companies testified that he knew that Mrs. Irons had received and kept the checks for her share of the royalties. We think it immaterial that the checks were not cashed.

Believing that whether the sand and gravel in the land in controversy can be fairly divided in kind is a question of

fact, and that the jury's finding that it can be so divided is supported by the evidence, we think an accounting was not called for, and that there was no error demanding a reversal of the judgment.

We have considered appellants' other points, but think our disposition of the points discussed renders it unnecessary to write upon them.

The judgment is affirmed.