OPINION
Opinion by
Chief Justice MORRISS.
How will 187.09 acres of land mostly surrounded by Ferndale Lake in Camp County be partitioned, by sale or in kind? There is no question before us that would change the trial court’s finding that the property is owned 83.8109 percent by ap-pellee, David R. Robinson, 0.1490 percent by appellant, Billy H. Champion,[1] and the remainder by some eighteen other individuals, some possibly with fractional interests smaller than l/2600ths of the whole. The trial court found that the property was not amenable to partition in kind and ordered a sale of the property. Champion[2] appeals, urging numerous points of error, but principally that the evidence is insufficient to support that judgment. The evidence addressing whether the property is subject to partition in kind does not include any expert testimony and is the principal focus of this opinion.
We affirm the trial court’s judgment, because (1) sufficient evidence supports the finding that the property was incapable of partition in kind, (2) sufficient evidence supports the trial court’s rejection of fraud, and (3) Champion’s other issues do not demonstrate any reversible error.
The property in question had been originally purchased by James Champion in 1911. James and his wife Lizzie, both of whom died intestate, had eight children, including Willie Champion and Ecotrell Champion. Willie was married twice. Willie and his first wife, Fannie Bell Watson Champion, had three children, including James Champion, Jr. James, Jr. and his wife, Kathryne, both died intestate and had fourteen children including Appellant, Champion. Willie and his second wife, Esther Cummings, had three children.
In the 1970s, Lela Ann Shaw, a daughter of Ecotrell, obtained powers of attorney from several, but not all, of the descendents of James. Shaw testified that, because she paid the taxes, she believed the property belonged to her. Shaw then transferred the property to a relative[3] *122 who transferred the property back to Shaw. Shaw later transferred the property to Wanda Wagner who then transferred the property back to Shaw. In 2004,' Shaw transferred the property to her company, J & L Diversified Business Services, Inc., which used the property as collateral for a loan. J & L, though, did not own the property in its entirety. Numerous family members of Shaw, including Champion, still had undivided interests in the property. The J & L loan was foreclosed, and that interest in the property was purchased by Lloyd Gillespie. In 2011, Robinson purchased, by special warranty deed, his interest in the property from Gillespie.
Robinson brought a lawsuit against the other property owners seeking a partition by sale. At trial, Robinson testified that he owned 83.8109 percent of the property and that Champion owned 0.1490 percent.[4] Robinson admitted that he purchased the property with knowledge that there was a “cloud” on the title but testified he did not worry because he was given a “warranty deed.” Robinson testified that the property, which was mostly surrounded by Ferndale Lake, had a single access location and could not be partitioned. According to Robinson, the property had only fourteen acres of valuable lake front property, and the remainder of the property consisted of oil fields and swamps. Given the small percentages of some of the owners, Robinson testified it would be impossible to partition the property.
The trial court rendered judgment awarding Robinson 84.1087 percent interest, awarding Champion 0.1490 percent interest, and ordering a partition by sale. Champion timely filed a post-judgment motion titled “motion to vacate” in which he asked the trial court to reconsider its judgment on the basis that the evidence was factually insufficient to establish that the property was incapable of partition.
Champion has appealed urging six issues. Champion’s first four issues raise, in essence,[5] legal and factual sufficiency challenges to the evidence, including a challenge to the trial court’s order of a partition by sale. Champion alternatively argues that the evidence is legally and factually insufficient to support the trial court’s implied rejection that Shaw committed fraud or fraudulent inducement— an issue not pled, but which may have been tried by consent. Champion also argues that the trial court erred in denying his motion for continuance, that he received inadequate notice of the trial setting,[6] that the trial court erred in admit *123 ting the power of attorney, that he never waived his right to a jury trial, that the trial court erred in failing to hold a “due process” hearing on a 1979 heirship affidavit, and that the attorney ad litem rendered ineffective assistance of counsel and committed ethics violations.

(1) Sufficient Evidence Supports the Finding that the Property Was Incapable of Partition in Kind

Champion argues that the trial court erred in granting a partition by sale instead of a partition in kind. Champion says he favors a partition in kind. Robinson argues the property cannot be partitioned in kind. Champion cites the standards for legal and factual sufficiency and requests a new trial.
Partition of property is provided for in the Texas Rules of Civil Procedure. See Tex.R. Civ. P. 756-71. Texas law “favors partition in kind over partition by sale.” Cecola v. Ruley, 12 S.W.3d 848, 853 (Tex.App.-Texarkana 2000, no pet.). “Should the court be of the opinion that a fair and equitable division of the real estate, or any part thereof, cannot be made, it shall order a sale of so much as is incapable of partition_” Tex.R. Civ. P. 770. This Court has explained that, although the Rule seems to provide that the property must be “incapable” of partition in kind, the Rule “does not mean incapable in a physical sense.” Cecola, 12 S.W.3d at 855. Our inquiry is focused on whether partition in kind is “fair and equitable,” which includes whether “property can be divided in kind without materially impairing its value.” Id. The party seeking partition by sale bears the burden of proving a partition in kind would not be fair and equitable. Id. at 853-54.
Robinson directs this Court to a number of facts he claims support a partition by sale: (a) there is “a single dirt road to the property”; (b) the property contains geographically diverse features including lake frontage, oil wells, timber, bottomland, and swamp land; (c) there are multiple undivided interests, including some very small interests; and (d) “the costs of attempting to carve out these small interest tracts.” Id. at 853. Robinson argues we must defer to the trial court’s findings of historical fact.
The evidence is legally insufficient if there is a complete absence of evidence establishing a vital fact, the only evidence offered to prove a vital fact cannot be considered due to a rule of law or evidence, there is less than a scintilla of evidence to prove the vital fact, or the opposite of the vital fact is conclusively established. Jelinek v. Casas, 328 S.W.3d 526, 532 (Tex.2010). More than a scintilla of evidence exists when the evidence “rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.” Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.1997). “Less than a scintilla of evidence exists when the evidence is ‘so weak as to do no more than create a mere surmise or suspicion’ of a fact.” King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex.2003). In a legal sufficiency analysis, we credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex.2005).
When reviewing a factual sufficiency challenge, we examine the entire record, considering the evidence in favor of *124 and contrary to the challenged finding, and set aside the jury’s verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex.2001); Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.1986). When the party without the burden of proof on a fact issue complains the evidence is factually insufficient, the complaining party must show the credible evidence supporting the finding is too weak or that the finding is against the great weight and preponderance of the credible evidence contrary to the finding. Clayton v. Wisener, 190 S.W.3d 685, 692 (Tex.App.-Tyler 2005, no pet.); see Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.1965).
At trial and on appeal, Robinson has emphasized the lack of roads. Robinson testified the property had only a single, private road, which he described as a “trail used by the oil and gas companies.”[7] In Cecola, this Court considered the lack of evidence supporting common law easements in affirming a partition by sale. Cecola, 12 S.W.3d at 852. Since our opinion in Cecola, the Texas Property Code has been amended to provide a statutory right to an express easement when property is partitioned. See Tex. Prop. Code Ann. § 23.006 (West Supp.2012) (added 2001). Thus, the fact that the property has only a single road does not require a conclusion that the tract is incapable of partition.
Cecola is also distinguishable due to the size and peculiar shape of the property in dispute. In Cecola, the property was a “.257-acre strip of land, measuring 40 feet wide by 280 feet long,” owned by two individuals in equal shares. Cecola, 12 S.W.3d at 853. The property in dispute here consists of 187.09 acres, owned by numerous individuals in varying proportions. Because the size of the property and the fractional interests owned in it have a distinct effect on whether property can be partitioned in kind, this fact makes Cecola largely distinguishable.
Another distinguishing feature between this case and Cecola is the lack of expert testimony in this case. In Cecola, the record contained expert testimony that partitioning would materially impair the narrow lot’s value. Id. at 854. The record in this case does not contain any such testimony. The question is whether that evidentiary deficiency is fatal.
Robinson testified as a lay witness, not an expert. The record contains no request that Robinson be certified as an expert and contains no evidence that Robinson has any qualifications to testify as an expert.[8] While lay persons may testify concerning the value of property they own,[9] Robinson’s testimony goes beyond that. When asked whether “you could *125 possibly try to divide that into all the little pieces ...Robinson responded, “I can’t see a way.” Robinson also testified that it would be expensive to partition the property. Normally, whether property can be partitioned in kind and the cost of such a partition are matters outside the experience of the average lay person. Lopez-Juarez v. Kelly, 348 S.W.3d 10, 19 (Tex. App.-Texarkana 2011, pet. denied) (discussing requirements of lay opinions). When expert testimony is required, lay evidence cannot substitute for it. City of Keller, 168 S.W.3d at 812. Robinson’s lay opinion that the property could not be partitioned is not expert testimony.
The property also hosts oil and gas activities. Although Gillespie reserved the mineral estate in the special warranty deed transferring the property to Robinson, the record does not contain evidence concerning whether the mineral estate had been previously severed. Robinson testified he did not know who owned the mineral estate. Assuming the mineral estate had not been previously severed from the surface estate, Champion would have an interest in the mineral estate. Regardless, it is presumed, in the absence of proof to the contrary, that minerals are equally distributed, and a partition in kind will not result in an inequitable distribution of the mineral estate. Gilbreath v. Douglas, 388 S.W.2d 279, 283 (Tex.Civ.App.-Amarillo 1965, writ refd n.r.e.). The record does not contain any evidence that partition would result in an inequitable distribution of the mineral estate.
The evidence presented in support of the trial court’s judgment is Robinson’s testimony that the 187.09 acres are geographically diverse, there are multiple interest holders, and some of the lots would be “itty-bitty.”[10]
We believe that the diminutive size of the smallest shares is particularly telling here. Eleven named individuals own fractional interests of less than 15/100ths of a percentage point, equating to a bit over a quarter of an acre each on a homogenous tract. To further complicate the situation, one of those so-called quarter-acre shares is itself to be subdivided, likely among four or more individuals. Specifically, one interest of 0.1489 percent is listed in the amended judgment of the trial court as being owned by Marilyn J. Hill, Kathryn Yvonne Champion McDonald, “and other children of Willie James Champion.” Our review of the record does not indicate the number of the “other children,” but the use of the plural would indicate that this share would be shared by at least four people, the two named individuals and at least two unspecified “children.” If that is true, at the very largest, the shares of those “children” would be 0.037225 percent each, equating to a lot size of less than 7/100ths of an acre, if the land were relatively homogenous.[11] If the two named owners split the share equally, and there are no other owners, each share would be 0.07445 percent, equating to less than 14/100ths of an acre.
While, expert testimony is usually needed to establish that a tract cannot *126 feasibly be divided in kind, we believe such is not needed in situations such as this, where rural, varied land is owned in such small interests that the fact-finder is justified in concluding, without the benefit of expert testimony, that an in-kind division is simply not workable.[12]
We are persuaded by two memorandum opinions from our sister court in Austin. See Wheeler v. Phillips, No. 03-10-00221-CV, 2011 WL 4011455, at *8-9, 2011 Tex. App. LEXIS 7402, at *24-26 (Tex.App.Austin Sept. 7, 2011, no pet.) (mem. op.) (varied 82.201 acres in Bastrop County; share equates to less than 57/100ths of acre); Taylor v. Hill, No. 03-03-00540-CV, 2004 WL 1469300, at *1, 2004 Tex. App. LEXIS 5747, at *1 (Tex.App.-Austin July 1, 2004, no pet.) (mem. op.) (varied 100 acres in Lee County; share equates to about 13/100ths of acre). The smallest fractional share involved here-7/100ths of an acre—is much less than either of the interests in those Austin cases.
We conclude there is more than a scintilla of evidence that a partition in kind would not be fair and equitable. Thus, the evidence is legally sufficient to support the trial court’s ruling on that issue.
Moving on to our consideration of the factual sufficiency of the evidence, we are to consider whether the evidence is so weak that the trial court’s conclusion that Robinson met his burden of proof is clearly wrong. Champion did not present any contrary evidence to dispute Robinson’s testimony, but Robinson had the burden of proof. Certainly, the fact that a 187.09-acre property contains lake frontage, oil and gas activities, mining activities, and swamp land does not necessarily preclude partition in kind. Nor does partition in kind require equal size lots. On the other hand, much of this rural land is “swampy,” some of it lies beneath the lake, and there is the evidence of numerous, quite small, individual interests in this property, which we have already detailed.
While the better practice may be to present expert testimony on the issue, and in most cases such testimony is needed, we conclude that, here, the evidence is factually sufficient to support the trial court’s finding that a partition in kind would not be fair and equitable. We overrule these issues.

(2) Sufficient Evidence Supports the Trial Court’s Rejection of Fraud

Champion advances a legal sufficiency challenge alleging the trial court erred in rejecting his unpled collateral attack on Robinson’s title. Champion argues that Shaw admitted she committed fraud in obtaining the power of attorney, that Shaw forged Otis Champion’s signature on the power of attorney, and that the foreclosure was fraudulent.[13] Champion argues these wrongful acts defeat Robinson’s title.
Robinson and the attorney ad litem argue that Champion lacks standing to challenge their acquisition of title through Shaw’s power of attorney. Robinson was required to establish title or interest in the *127 land to demand partition. See Tex.R. Civ. P. 756. Assuming, without deciding, that these affirmative defenses were tried by consent[14] and, assuming further, without deciding, that Champion has standing to make this challenge, the evidence is sufficient to support the trial court’s findings.
The record contains sufficient evidence to reject Champion’s fraud and fraudulent inducement claims. As noted above, Shaw testified her family members signed the power of attorney because she had paid the taxes on the property. The record does not contain any expert testimony supporting the claim that the signature of Otis was forged.[15] Although Shaw testified that the property was “illegally”[16] foreclosed, Shaw failed to explain why it was “illegal” or “bogus” other than denying that there was ever a mortgage on the property. Shaw later admitted she had used the property as collateral. Robinson introduced the relevant deeds, deeds of trust, and foreclosure documents. Because the record contains more than a scintilla of evidence supporting a rejection of Champion’s fraud and fraudulent inducement claims, the evidence is legally sufficient. Further, the rejection of fraud and fraudulent inducement is not contrary to the great weight and preponderance of the evidence. The evidence is factually sufficient to support the trial court’s implied rejection of fraud and fraudulent inducement.
(3) Champion’s Remaining Issues Fail to Demonstrate Reversible Error
Champion also argues that the trial court erred in denying his motion for continuance, he received inadequate notice of the trial setting, the trial court erred in admitting the power of attorney, he never waived his right to a jury trial, the trial court erred in failing to hold a “due process” hearing on the 1979 heirship affidavit, and the attorney ad litem rendered ineffective assistance of counsel and committed ethics violations. We overrule these complaints.
Because Champion’s motion for continuance was not accompanied by an affidavit, we may not find an abuse of discretion. See Tex.R. Civ. P. 251; Mathew v. McCoy, 847 S.W.2d 397, 399 (Tex. App.-Houston [14th Dist.] 1993, no writ).
Champion argues he received notice only that a preliminary hearing was to be held. Unlike most proceedings, a partition cause of action has two final appealable judgments. See Griffin, 610 S.W.2d 466. The first judgment, often characterized as preliminary, determines “the interest of each of the joint owners or claimants, all questions of law affecting the title, and appoints commissioners and gives them appropriate directions.” Ellis v. First City Nat’l Bank, 864 S.W.2d 555, 557 (Tex. App.-Tyler 1993, no writ). The record does not support Champion’s claim that he received inadequate notice.
*128 Champion argues that the trial court erred by admitting the power of attorney as an ancient document.[17] Shaw testified she hired an attorney to draft the power of attorney and traveled around East Texas with a notary public to secure the signatures. Even if the trial court erred in admitting the power of attorney as an ancient document under Rule 803(16) of the Texas Rules of Evidence, any error was rendered harmless by Shaw’s testimony. Volkswagen of Am., Inc. v. Ramirez, 159 S.W.3d 897, 907 (Tex.2004) (any error in admission of evidence “is deemed harmless and is waived if the objecting party subsequently permits the same or similar evidence to be introduced without objection”). Robinson has failed to show the error probably caused the rendition of an improper verdict. See Tex.R.App. P. 44.1.
Champion argues he never waived his right to a jury trial. A civil litigant can waive a jury trial by failing to make a timely written jury demand. Tex.R. Civ. P. 216 (“No jury trial shall be had in any civil suit, unless a written request for a jury trial is filed with the clerk of the court a reasonable time before the date set for trial of the cause on the nonjury docket, but not less than thirty days in advance.”). The record does not contain a timely jury demand.
Champion claims that the trial court was obligated to hold a due process hearing on the 1979 heirship affidavit. Champion has failed to cite any authority that such a hearing was required. The law is well settled that “[a] party proceeding pro se must comply with all applicable procedural rules” and is held to the same standards as a licensed attorney. Weaver, 942 S.W.2d at 169. We review and evaluate pro se pleadings with liberality and patience, but otherwise apply the same standards applicable to pleadings drafted by lawyers. Foster v. Williams, 74 S.W.3d 200, 202 n. 1 (Tex.App.-Texarkana 2002, pet. denied). We are not responsible for conducting a party’s legal research. See Canton-Carter v. Baylor College of Med., 271 S.W.3d 928, 932 (Tex.App.-Houston [14th Dist.] 2008, no pet.). This issue has been inadequately briefed and, thus will be overruled. Tex.R.App. P. 38.1(h); see Bolling v. Farmers Branch Indep. Sch. Dist., 315 S.W.3d 893, 896 (Tex.App.-Dallas 2010, no pet.).
Finally, Champion argues that the attorney ad litem rendered ineffective assistance of counsel and committed ethics violations. The ad litem argues he never represented Champion and that Champion represented himself pro se at trial. It is not necessary for us to decide whether Champion ever had an attorney-client relationship with the attorney ad litem,[18] whether the attorney ad litem’s performance was deficient, or whether any ethics violations occurred. Under the fact presented here, Champion, as an indigent civil litigant, did not have a constitutional right to appointed counsel.[19] Champion has *129 failed to provide this Court with any authority supporting his argument that the alleged ineffective assistance of counsel was reversible error or that the alleged ethics violations are reversible error. This issue has been inadequately briefed and is overruled. Tex.R.App. P. 38.1(h).
Legally and factually sufficient evidence supported the trial court’s finding that the property was incapable of partition in kind. Sufficient evidence supports the trial court’s rejection of fraud. Champion’s other issues do not demonstrate any reversible error. For the reasons stated, we affirm the trial court’s judgment.
Dissenting Opinion by Justice MOSELEY.

.Champion has argued on behalf of the heirs of James Champion in his brief. While a party may prosecute or defend his or her own suit pro se, a pro se appellant may not represent others. See Tex.R. Civ. P. 7; Tex. Gov’t Code Ann. § 81.102(a) (West 2005); Tex. Penal Code Ann. § 38.123 (West 2011); Crain v. The Unauthorized Practice of Law Comm. of the Sup.Ct. of Tex., 11 S.W.3d 328, 332-34 (Tex. App.-Houston [1st Dist.] 1999, pet. denied). Although the caption of the notice of appeal references "James Champion Heirs,” the text of the notice of appeal claims an appeal for only Billy H. Champion. Only Champion signed the notice of appeal. Thus, Billy H. Champion is the only appellant in this case.

. Any reference to "Champion” throughout this opinion refers to appellant, Billy H. Champion; others are identified by their first names.

. This "straw man” relative was Virlee Shaw, but any further reference to Shaw will continue to refer to Lela Ann Shaw.

. This calculation presumes that none of the bequests to James' children lapsed or that the Anti-lapse Statute prevents such lapse. See Tex. Prob.Code Ann. § 68 (West 2003) (current version to be amended effective Jan. 1, 2014). Champion has not challenged these percentages on appeal. The law is well settled that "[a] party proceeding pro se must comply with all applicable procedural rules” and is held to the same standards as a licensed attorney. Weaver v. E-Z Mart Stores, Inc., 942 S.W.2d 167, 169 (Tex.App.-Texarkana 1997, no pet.). Ownership has not been assigned for our review.

. We must liberally construe issues and must address them on the merits if we can discern their substance. Perry v. Cohen, 272 S.W.3d 585, 588 (Tex.2008) ("we liberally construe issues presented to obtain a just, fair, and equitable adjudication of the rights of the litigants”) (quoting El Paso Natural Gas Co. v. Minco Oil & Gas, Inc., 8 S.W.3d 309, 316 (Tex. 1999)).

.Champion argues he received notice only that a preliminary hearing was to be held. Unlike most proceedings, a partition cause of action has two final appealable judgments. See Griffin v. Wolfe, 610 S.W.2d 466 (Tex. 1980). The first judgment, often characterized as preliminary, determines "the interest of each of the joint owners or claimants, all questions of law affecting the title, and ap *123 points commissioners and gives them appropriate directions.” Ellis v. First City Nat'l Bank, 864 S.W.2d 555, 557 (Tex.App.-Tyler 1993, no writ). The record does not support Champion’s claim that he received inadequate notice.

.On appeal, Robinson argues this road is a public road. Robinson attempts to attach documents and pictures to his brief in support of this argument. We cannot consider documents, that are not part of the record, attached as appendices to briefs. Paselk v. Rabun, 293 S.W.3d 600, 613 (Tex.App.-Texar-kana 2009, pet. denied); WorldPeace v. Comm’n for Lawyer Discipline, 183 S.W.3d 451/465 n. 23 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). The appellate record does not contain any evidence that a public road exists on this property.

. Robinson responded in the affirmative when asked "[0]ne of the things you do for a living is buy and sell real estate” and later testified, "I buy and sell land all the time.”

. Under certain conditions, a property owner can testify to the market value of his or her own property. Porras v. Craig, 675 S.W.2d 503, 504 (Tex. 1984).

. There is no evidence concerning the size of the lots. We note that 0.1490 percent of 187.09 acres results in approximately a quarter acre. Since the land apparently has differing values, a larger lot of less valuable land could be partitioned.

. Wo do not suggest that partition in kind would be accomplished by simply dividing 187.09 acres into the fractional ownership interests, without consideration of the relative values of the resulting parcels. Depending on how a partition were accomplished — because values should be considered — a resulting parcel could be larger or smaller than such a mechanical division would produce.

. The dissenting opinion posits that, without evidence of land value, the land in question might be as valuable as realty in Manhattan or as worthless as a parcel in the Sahara Desert. While in the abstract that might be true, here, the evidence shows this land to be rural Camp County lowland. We believe that, even without explicit value evidence, the trial court is authorized to recognize the reality that this case is about land that cannot be compared to expensive urban commercial property.

. Champion argues that the trial court impliedly ruled on fraud when he reinstated the interests of Melvin L. Champion and Maggie Lene Champion. The record establishes these interests were reinstated by agreement.

.At trial, the trial court permitted the pro se defendants to present evidence on common law fraud and fraudulent inducement. We will assume, without deciding, these issues were tried by consent. See Tex.R. Civ. P. 67. On appeal, Champion argues statutory real estate fraud. See Tex. Bus. & Com.Code Ann. § 27.01 (West 2009). Any statutory fraud claims have not been preserved for appellate review and will not be considered. See Tex. R.App. P. 33.1.

. Champion argues we can compare the signature in the record with a signature attached to his brief and determine the trial court erred. Documents attached to appellate briefs do not thereby become evidence. Further, any such comparison would require expert testimony by a handwriting expert.

. Any procedural irregularities in the foreclosure have not been challenged.

.The power of attorney may have been admissible under Rule 803(14), providing a hearsay exception for recorded documents affecting interests in property, or Rule 803(15), providing a hearsay exception for uncontested statements affecting interests in property. See Tex.R. Evid 803(14), (15). Because Shaw’s testimony verifying the power of attorney rendered any error harmless, we leave this issue for another day.

. The attorney ad litem was appointed to represent the defendants who were served by publication. Champion, who was served by publication, filed a pro se answer and represented, himself at trial.

. While there is a constitutional right to effective assistance of counsel in criminal cases involving imprisonment, see Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this is a civil case. In most civil cases, an indigent civil litigant does *129 not have a constitutional right to appointed counsel. See Lassiter v. Dep’t of Soc. Servs., 452 U.S. 18, 26, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (due process did not require appointment of counsel for indigent civil litigant in parental rights termination case); cf. Turner v. Rogers, - U.S. -, -, 131 S.Ct. 2507, 2520, 180 L.Ed.2d 452 (2011) (considering lack of counsel in concluding civil contempt incarceration violated Due Process Clause); Scott v. Illinois, 440 U.S. 367, 370, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979) (right to counsel in criminal cases depends on whether there is "actual deprivation of a person’s liberty”).