

# Fourth Court of Appeals

## San Antonio, Texas

### OPINION

No. 04-12-00827-CV

**DAVEN CORPORATION**,
Zalman Resources, Inc. and Sport Resources, Inc.,
Appellants/Cross-Appellees

v.

**TARH E&P HOLDINGS, L.P.**, Alexander Energy,
and James W. Alexander, Trustee of the James W. Alexander Living Trust,
Appellees/Cross-Appellants

From the 293rd Judicial District Court, Zavala County, Texas
Trial Court No. 10-11-12360-ZCV
Honorable Cynthia L. Muniz, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:        Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed:  July 23, 2014

AFFIRMED

Beren[1] appeals the trial court's judgment ordering a partition in-kind of mineral interests it

jointly owns with TAR.[2] In turn, TAR presents a conditional cross-appeal, to be considered only

---

[1] "Beren" includes the following appellants/cross-appellees: (1) Daven Corporation; (2) Zalman Resources, Inc.; and (3) Sport Resources, Inc. The corporations are owned by three brothers, David Beren, Jonathan Beren, and Daniel Beren, respectively.

[2] "TAR" includes the following appellees/cross-appellants: (1) oil and gas company Texas American Resources, LLC ("TAR"), which acquired the original plaintiff TARH E&P Holdings, L.P.'s assets, including its interests in the Property, and was substituted as a party plaintiff in the lawsuit in place of TARH; (2) Alexander Energy; and (3) James W. Alexander, trustee of the James W. Alexander Living Trust.

in the event this court reverses the partition, challenging the trial court's finding that a 1970 Joint Operating Agreement is not binding on the parties. We affirm the trial court's judgment, and therefore do not reach the conditional cross-appeal.

## BACKGROUND

TAR sued Beren seeking a partition-in-kind of their jointly owned oil and gas interests in approximately 5,000 acres ("deep rights" at depths below 5,700 feet) in Dimmit and Zavala Counties (the "Property"). There are eleven oil and gas leases covering the Property. TAR sued after Beren rejected its plans to develop the minerals subject to the leases. TAR also sought to bind Beren to a Joint Operating Agreement executed in 1970, which predated Beren's ownership of the mineral interests (the "1970 JOA"). Beren pled that the mineral interests are not susceptible to a fair and equitable partition-in-kind and sought to force a judicial sale.

Competing summary judgment motions were filed regarding the parties' ownership interests in the Property and the parties' declaratory judgment claims involving the binding effect of the 1970 JOA. The trial court granted summary judgment in favor of TAR on the question of ownership, finding that it owned 70% of the Property and Beren owned 30% of the Property. However, the court granted summary judgment for Beren on the question of whether the 1970 JOA was binding on the parties, finding that it was not.

Subsequently, a jury trial was held on TAR's claim for partition-in-kind of the Property. The jury made a single finding: that the Property is partitionable in-kind. The court then entered a final judgment incorporating the summary judgment orders and holding the Property is "susceptible to fair and equitable partition in kind" and appointing a surveyor and three commissioners to make the partition. The in-kind partition of the Property means that TAR would separately own 3,500 acres (70%) and Beren would separately own 1,500 acres (30%). Beren now appeals the judgment ordering a partition-in-kind.

**BEREN'S APPEAL**

Beren raises two issues in its appeal: (1) whether the trial court erred in refusing to submit its additional proposed jury instruction; and (2) whether the jury's finding that the Property is subject to a fair and just partition-in-kind is against the great weight and preponderance of the evidence, i.e., whether the evidence is factually insufficient to support the jury's finding.

## Omission of Requested Jury Instruction

In its first issue, Beren argues the court erred in failing to submit its proposed jury instruction informing the jury of factors to consider under *White v. Smyth* in determining whether "uncertainties not resolveable at a reasonable cost" preclude partition-in-kind of the mineral estate. *White v. Smyth*, 147 Tex. 272, 214 S.W.2d 967, 973-74 (1948) (noting there was substantial evidence that the presence, depth, and value of the rock asphalt varied from place to place on the "known mineral land," and stating that the high degree of uncertainty about the nature, location, quantity, and quality of the mineral made it almost impossible, without prohibitive cost, to determine the extent and value of the mineral in place, thereby precluding a fair division of the property in-kind). Beren asserts the jury charge was erroneous because it contained no instruction under *White* directing the jury to treat a mineral estate differently from a surface estate for purposes of partition-in-kind.

The charge asked the jury to answer a single question: "Do you find from a preponderance of the evidence that the Subject Property is partitionable in-kind?" The jury answered "Yes." The court's instructions with respect to this question were:

> . . . "partitionable in-kind means that the Subject Property is "partitionable in-kind" unless Defendants have proved by a preponderance of the evidence that the Subject Property is not "partitionable in-kind." You do not need to agree upon any particular division to find that the property is "partitionable in-kind."

. . . the question is not asking whether the Subject Property is incapable of division in a physical sense. Any land could conceivably be divided into microscopic fractional pieces. Instead, you must look to determine,

> (1) If a partition in-kind would be impracticable, given the relative size of some interests,
> (2) Whether the divided interest would have an equal interest relevant to its percentage of the whole, and
> (3) Whether the value of the share of each would not be materially less than his share of the money equivalent that would be obtained for the whole.

In answering this question, you may consider whether dividing the land into parcels causes its value to be substantially less than its value when whole. You may also consider whether the land could be divided into several parts of equal value, and if so, whether the combined value of the smaller parts would be materially less than the value of the undivided whole.

Beren requested the following additional instruction based on language in *White* which the trial court declined to give:

> You are further instructed that in situations involving the ownership of mineral interests or mineral leases, it is the general rule that known mineral lands, because of elements of uncertainty, not resolvable at a reasonable cost, are not capable of fair division.

### *Standard of Review*

We review a trial court's refusal to submit a requested jury instruction for an abuse of discretion. *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012); *Wal-Mart Stores, Inc. v. Middleton*, 982 S.W.2d 468, 470 (Tex. App.—San Antonio 1998, pet. denied) (court has more discretion over instructions than questions). The court does not abuse its discretion in refusing to submit an improper instruction such as an instruction that comments on the weight of the evidence or misleads the jury. *Middleton*, 982 S.W.2d at 470. To be proper, an instruction must (i) assist the jury, (ii) accurately state the law, and (iii) be supported by the pleadings and evidence. TEX. R. CIV. P. 277, 278; *Middleton*, 982 S.W.2d at 470. Rule 278 provides that failure to submit an instruction is not grounds for reversal unless a substantially correct instruction was tendered to the court in writing by the party complaining on appeal.

*Beren's Argument*

Beren does not argue that the instructions submitted to the jury were erroneous—to the contrary, it agrees they were correct and, in fact, were the instructions requested by Beren. However, Beren asserts the jury should have been instructed on additional factors pertaining to partition-in-kind of a mineral estate versus surface land, particularly known mineral producing land on which the distribution of the quantity and quality of the minerals is uncertain.

Beren's premise is that the evaluation of whether a mineral estate is susceptible to partition-in-kind is "radically different" from a surface estate because the nature of oil and gas means they may be produced from one part of a tract and not from another part. Beren relies on many of the same cases as TAR which set out the basic principles for partition of mineral estates. In *Henderson v. Chesley*, 116 Tex. 355, 292 S.W. 156 (Tex. 1927), the court established the rule that if there has been no development or exploration for minerals such that the land is "unknown mineral land," then the court assumes there is an even distribution of minerals beneath the land for purposes of partition. *Id.* at 156. If, on the other hand, the presence of oil or gas is known to exist, the court takes into account the nature of the mineral in fashioning an equitable partition. *Id.* In *Humble Oil & Refining Co. v. Lasseter*, 95 S.W.2d 730 (Tex. Civ. App.—Texarkana 1936, writ dism'd), wells had already been drilled on the land, so it was "known mineral land;" the evidence showed every acre of the land was oil-producing and had equal value, so the court held it was subject to partition-in-kind. *Id.* at 731. In *White*, the land was known mineral producing land, but the evidence showed the mineral's existence and depth varied across the property and was uncertain. Because of the "variable quantity and quality of the rock asphalt," the court held it was "difficult and even impossible, with any reasonable degree of accuracy and without prohibitive cost, to determine the extent and value of rock asphalt in place and to make a fair division of it by metes and bounds." *White*, 214 S.W.2d at 974 (affirming the jury's finding that the rock asphalt was

incapable of a fair partition-in-kind). This statement in *White* that it was practically impossible to determine the quantity and quality of the mineral located across the property is the source of the language used by Beren in its proposed instruction. *See id.* at 973.

Beren asserts the trial was one of "dueling experts," and because the evidence was conflicting it necessarily established that uncertainties exist about the quantities and qualities of the minerals beneath the land, thereby making it inequitable and unfair to divide the minerals in-kind. Beren argues the court erred in failing to submit its instruction based on *White* because it was a correct statement of the law, would have assisted the jury, and was raised by the pleadings and evidence. Beren contends that without proper guidance through its *White* instruction the jury was free to find the mineral estate partitionable in-kind even if they believed the quantities, qualities, and values of the minerals at different locations on the Property were uncertain.

### *TAR's Argument*

Based on its wording, TAR asserts Beren's proposed instruction was an impermissible comment on the weight of the evidence on the central contested fact issue, and its submission would have effectively compelled a verdict in favor of Beren. *See* TEX. R. CIV. P. 277 (prohibiting the court's charge from making a direct comment on the weight of the evidence or advising the jury of the effect of their answers). TAR argues the proposed *White* instruction assumed the truth of a controverted fact by telling the jury that "because of elements of uncertainty [these] known mineral lands . . . are not capable of fair division;" it presumed that the trial evidence conclusively established uncertainty regarding the minerals. The wording of the instruction implicitly advised the jury that a fact was established when it actually was hotly contested. *See Tex. A & M Univ. v. Chambers*, 31 S.W.3d 780, 785 (Tex. App.—Austin 2000, pet. denied). TAR contends the proposed instruction was therefore an improper comment on the weight of the evidence and was properly denied.

*Analysis*

An impermissible comment on the evidence occurs when a jury instruction assumes the truth of a controverted material fact, or "tilts" or "nudges" the jury in one direction. *See Lemos v. Montez*, 680 S.W.2d 798, 801 (Tex. 1984); *see also Torres v. Caterpillar, Inc.*, 928 S.W.2d 233, 241-42 (Tex. App.—San Antonio 1996, writ denied); *Associated Carriages, Inc. v. Int'l Bank of Commerce*, 37 S.W.3d 69, 75 (Tex. App.—San Antonio 2000, pet. denied). As worded, Beren's proposed *White* instruction did not *ask* the jury to determine (i) *whether* the Property was "known mineral land," and (ii) *whether* there was uncertainty, not resolveable at reasonable cost, about the quantity or quality of minerals at different locations; rather, it improperly directed the jury that these facts were so. The proposed instruction assumed that the trial evidence proved the existence of uncertainties about the minerals' quantity and quality across the Property and suggested there was only one answer to the question the jury was tasked with answering—that no fair partition-in-kind could occur. Therefore, we conclude that Beren's proposed instruction was an improper direct comment on the weight of the evidence and that the trial court did not abuse its discretion in refusing to submit the instruction. *See* TEX. R. CIV. P. 277; *see also Chambers*, 31 S.W.3d at 783 (explanatory instruction must be correct to be a proper instruction authorized by the rule).

**Factual Sufficiency – Adverse Jury Finding**

In its second issue, Beren asserts the evidence is factually insufficient to support the jury's finding that the Property is partitionable-in-kind. Beren argues the great weight and preponderance of the evidence demonstrated that an in-kind partition of the mineral estate would be unfair and inequitable to one of the co-tenants, i.e., Beren, due to uncertainty about the minerals' quantity and quality across the Property; therefore the mineral estate is incapable of partition-in-kind and must be partitioned by judicial sale. *See* TEX. R. CIV. P. 770. TAR argues that Beren's sufficiency analysis depends on its flawed premise that *White* controls this case. TAR asserts that we must

review the factual sufficiency of the evidence against the jury charge as submitted, to which Beren did not object, and that the jury's finding that the Property may be partitioned in-kind is not against the great weight and preponderance of the evidence.

### *Standard of Review*

In reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence and will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *In re Estate of McNutt*, 405 S.W.3d 194, 200 (Tex. App.—San Antonio 2013, no pet.). A party attacking the factual sufficiency of an adverse jury finding on which it had the burden of proof must show the adverse finding is against the great weight and preponderance of the evidence to obtain a reversal. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). We may reverse only if the evidence in support of the finding is so weak, or if the finding is so against the great weight and preponderance of the evidence, that it is clearly wrong and unjust. *Id.*; *Ingham v. O'Block*, 351 S.W.3d 96, 100 (Tex. App.—San Antonio 2011, pet. denied). When a party does not object to the jury charge or instructions given, the reviewing court measures the sufficiency of the evidence against the charge and instructions actually given rather than the charge or instruction that should have been given. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2002). Beren did not object to the instructions actually submitted in the jury charge and does not challenge those instructions on appeal; therefore, we analyze the sufficiency of the evidence against the charge submitted. *Id.*

### *Applicable Law Regarding Partition In-Kind of Mineral Estate*

It is well established that Texas law favors partition-in-kind rather than partition by judicial sale. *See* TEX. R. CIV. P. 756-771; TEX. PROP. CODE ANN. § 23.001 (West 2000) (joint owner of real property interest has statutory right to compel partition); *see also Champion v. Robinson*, 392

S.W.3d 118, 123 (Tex. App.—Texarkana 2012, pet. denied). Moreover, it is also well settled that mineral interests are susceptible to partition-in-kind. *See Mapco, Inc. v. Carter*, 817 S.W.2d 686, 687 (Tex. 1991) (per curiam) (mineral estate was partitioned-in-kind); *Humble Oil*, 95 S.W.2d at 731; *see also Outlaw v. Bowen*, 285 S.W.2d 280, 286 (Tex. Civ. App.—Amarillo 1955, writ ref'd n.r.e.) (the law favors partition of mineral interests in-kind); *Gilbreath v. Douglas*, 388 S.W.2d 279, 283 (Tex. Civ. App.—Amarillo 1965, writ ref'd n.r.e.) (same).

The threshold question in a partition suit is whether the property is "susceptible of partition" or "incapable of partition" because a "fair and equitable division" cannot be made. TEX. R. CIV. P. 761, 770. The determination of whether a partition-in-kind is fair and equitable includes whether the "property can be divided in kind without materially impairing its value." *Champion*, 392 S.W.3d at 123; *Cecola v. Ruley*, 12 S.W.3d 848, 855 (Tex. App.—Texarkana 2000, no pet.). It is presumed, in the absence of proof to the contrary, that minerals are equally distributed and that a partition-in-kind will not result in an inequitable distribution of the mineral estate. *Champion*, 392 S.W.3d at 125. The party opposing the partition-in-kind has the burden to prove that the property is not subject to a fair division and is thus incapable of partition-in-kind. *Id.* at 123; *Adams v. Adams*, 205 S.W.2d 801, 803 (Tex. Civ. App.—Waco 1947, no writ). When the evidence is conflicting, the issue of whether partition-in-kind can be fairly made is a question of fact for the jury. *Rayson v. Johns*, 524 S.W.2d 380, 382-83 (Tex. Civ. App.—Texarkana 1975, writ ref'd n.r.e.); *Robertson v. Robertson*, 425 S.W.2d 707 (Tex. Civ. App.—Houston [14th Dist.] 1968, no writ). The presumption in favor of partition-in-kind and the burden of proof to rebut that presumption is the same regardless of whether the property to be partitioned is a mineral estate or a surface estate. *Irons v. Fort Worth Sand & Gravel Co.*, 284 S.W.2d 215, 219 (Tex. Civ. App.—Fort Worth 1955, writ ref'd n.r.e.).

Here, in answering the question whether the Property is susceptible to partition-in-kind, the jury was instructed to consider the following factors: (1) whether a partition-in-kind would be impracticable given the relative size of some interests, (2) whether the divided interest would have an equal interest relevant to its percentage of the whole, and (3) whether the value of the share of each would not be materially less than the share of the money equivalent that would be obtained for the whole. *See Cecola*, 12 S.W.3d at 855 (listing these factors as part of the "value measurement" test). The jury was also instructed they could consider "whether dividing the land into parcels causes its value to be substantially less than its value when whole," and "whether the land could be divided into several parts of equal value, and if so, whether the combined value of the smaller parts would be materially less than the value of the undivided whole." *See id.* (noting that substantial economic loss is a significant factor that would warrant a sale in lieu of a partition-in-kind). Finally, the jury was instructed that "the Subject Property is 'partitionable-in-kind' unless [Beren] . . . proved by a preponderance of the evidence that the Subject Property is not 'partitionable in-kind.'"

### *Analysis*

Both sides acknowledge this case was a "battle of the experts" and that there was conflicting evidence given on the key factors used by the jury in determining whether the Property is subject to partition in-kind. Each side attacks the reliability of the other's experts and their scientific data and methodologies. We briefly summarize the relevant evidence presented by each side.

### *Beren's Evidence*

Beren presented the testimony of two experts, Michael Hiner, a geologist, and Bill Crenshaw, a petroleum engineer. Hiner testified that he "could not say for sure" how faults near the Property would trend across the Property because there was not enough data. Hiner discussed

the problems of running across a fault when drilling a horizontal well, and stated that prior to drilling most companies invest in an exploratory technique similar to a 3-D survey, which is costly. Crenshaw critiqued the methodology used by Waymon Gore, TAR's petroleum engineer, in analyzing and extrapolating from the production data for Eagle Ford wells drilled near the Property. Crenshaw stated his opinion that the Property could not be fairly divided because "somebody is going to get a better deal."

Beren characterizes its evidence as proving a wide disparity of economic productivity among nearby wells and material unanswered questions about the nature of the fracture network underlying the Property, leading to too much uncertainty about the quantity and quality of the minerals underlying the Property, which cannot be resolved without significant cost. Therefore, Beren contends that it proved by a preponderance of the evidence that the mineral estate is not partitionable in-kind under *White*.

*TAR's Evidence*

In addition to the testimony of its president, David Honeycutt, TAR similarly presented the testimony of a petroleum engineer, Waymon Gore, and a geologist, Gordon Marney.

Gore explained that the Property contains three geologic formations: the Austin Chalk, the Eagle Ford, and the Buda. Gore stated that no Eagle Ford wells below 5,700 feet have yet been drilled on the eight-square miles of the Property. Therefore, he reviewed Railroad Commission drilling records and production data from five Eagle Ford wells within a five-mile radius of the Property; all were horizontal wells with similar drilling and completion methods and all had "very similar" initial production rates. Based on his calculations using the well production data, Gore concluded the oil and gas for each of the five wells was of relatively equal value. Gore opined that an Eagle Ford well drilled at any location on the Property would produce quantities of oil and gas in the same estimated production range as the five nearby wells. He concluded that all wells drilled

- 11 -

on the Property would be "wells with very similar recoveries," stating the wells on Beren's 1,500 acres would be "just like" the wells on TAR's 3,500 acres after partition.

Marney testified that he reviewed three types of data: (i) a 1977 report analyzing a core sample taken below 5,700 feet, (ii) well logs for 20 wells drilled about 5,700 feet in the Austin Chalk and San Miguel formations, and (iii) 1970's and 1980's seismic data from several seismic lines that cross the Property. Marney also created his own seven synthetic seismograms based on the available data. Based on his analysis of the combined data, Marney opined that each of the formations underlying the Property is uniform in thickness, distribution, and rock properties across the Property, the hydrocarbons are uniformly distributed across the Property, and the value of each portion of the Property is the same.

Finally, Honeycutt stated that he has years of experience in the oil and gas industry and personal knowledge of oil and gas leases in the area of the Property. He testified that the price per acre would remain "identical" at $2,500 per acre after partition, and the size of the respective acreage after partition would not affect the per acre value for either party. He also stated that the Property is geologically similar across its entire acreage for purposes of mineral production based on the seismic data, well logs, core sample analysis, and production data from nearby wells. Honeycutt stated the Property was so similar that he "did not care" which parts TAR received as its 3,500 acre-interest in the partition.

TAR argues that its experts' testimony that the estimated oil/gas production is equal across the Property, i.e., that no one acre is different from any other one acre for purposes of mineral production or value, provides ample evidence to support the jury's finding that the Property is susceptible to a fair and equitable partition-in-kind.

*Conclusion*

In a factual sufficiency review, we consider all the evidence rather than merely the evidence in favor of the verdict, but must still defer to the jury's assessments of the weight and credibility of the trial evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819, 821 (Tex. 2005). Having heard competent yet conflicting expert testimony and scientific evidence concerning whether the Property is susceptible to a fair partition-in-kind, the jury could reasonably have chosen to give more credibility to TAR's witnesses in finding that the three *Cecola* factors weighed in favor of a fair partition-in-kind. In particular, Gore's testimony that a well on any 1,500 acres will be "just like" a well on any 3,500 acres, with "very similar recoveries," and Marney's testimony that the hydrocarbons are uniformly distributed across the Property provided a factually sufficient basis for the jury's finding that the Property is susceptible to partition-in-kind. *See Amerada Petroleum Corp. v. Cheesman*, 223 S.W.2d 74, 76-77 (Tex. Civ. App.—San Antonio 1949, writ ref'd) (where evidence showed that mineral interests underlying each square foot of the two lots in area proven for oil were equal in value, lots were subject to equitable partition-in-kind). Beren did not meet its burden to prove by a preponderance of the evidence that the Property is incapable of a fair partition-in-kind based on either disparities in value or uncertainties concerning the quality and quantity of minerals across the Property. *See Irons*, 284 S.W.2d at 220-21 (evidence was sufficient to sustain finding that sand and gravel could be partitioned in-kind because any uncertainty about quantity and quality of minerals in the land was resolved by competent evidence and therefore the rule in *White* did not apply); *see also Amerada Petroleum Corp. v. Massad*, 239 S.W.2d 730, 734 (Tex. Civ. App.—El Paso 1950, writ ref'd n.r.e.) (affirming order for partition-in-kind of "known and proven oil land" because the evidence showed a strong probability the oil underlying the tract was the same quality and volume throughout the tract and the problem in *White* did not exist). We

conclude the evidence is factually sufficient to support the jury's finding that the Property is partitionable-in-kind.

## CONCLUSION

Based on the above reasons, we overrule Beren's appellate issues and affirm the trial court's judgment ordering partition-in-kind of the Property. We therefore need not reach TAR's conditional cross-appeal.

Rebeca C. Martinez, Justice