

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00057-CV

PAULA ATKINSON, Appellant

V.

LAND ENDEAVORS, LLC, AND ALLEN L. EVANS, Appellees

On Appeal from the County Court at Law
Panola County, Texas
Trial Court No. 2023-089

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

## MEMORANDUM OPINION

Allen L. Evans and Jay Rossi[1] sued Paula Atkinson to partition property in accordance with the Uniform Partition of Heirs' Property Act (the Act). *See* TEX. PROP. CODE ANN. § 23A.002(5). After Atkinson decided not to purchase the property interests owned by Evans and Rossi, the trial court entered a decree of partition in kind, which appointed commissioners and a surveyor to assist in partitioning the property in kind. Atkinson appeals from that decision.

In her first point of error on appeal, Atkinson questions whether the doctrine of unclean hands barred the use of the equitable right of partition. In her second point of error, Atkinson argues that the trial court's letter-ruling and final order were not based on legally sufficient evidence. She also questions whether the trial court erred by stating that Atkinson announced ready for trial in the decree of partition.

We find that Atkinson failed to preserve her complaint related to unclean hands for our review. We also find that the trial court's decree of partition was supported by legally sufficient evidence. Lastly, we conclude that Atkinson, who appeared in-person for trial, has failed to adequately brief her last point of error. As a result, we affirm the trial court's decree of partition.[2]

---

[1]Land Endeavors, LLC, and Evans were the original party plaintiffs, but Land Endeavors was subsequently removed as a plaintiff and was replaced by Rossi.

[2]Atkinson also raised a separate point arguing cumulative error. Because our rulings on Atkinson's other points of error are dispositive of her cumulative error complaint, we overrule it.

## I.    Factual and Procedural Background[3]

This case involves the partition of the surface estate on "162.44 acres of land, more or less, situated in the Larkin Womack Survey, A-706 and the James Shandoin Survey, A-595, Panola County, Texas" (Property).[4]   The appellate record establishes that Joseph B. Atkinson, Jr., who previously owned the Property, bequeathed it to his three children in his last will and testament, including Atkinson and her two sisters, Brenda Jayne Atkinson Rice and Sherry Jo Atkinson.  It is undisputed (1) that Brenda sold and deeded her undivided one-third interest in the Property to Evans and (2) that Sherry sold and deeded her undivided one-third interest to Land Endeavors, LLC, which in turn transferred the interest to Rossi.  After acquiring their interests from Atkinson's sisters, Evans and Rossi sued Atkinson for partition under the Act.  *See* Tex. Prop. Code Ann. § 23A.002(5).[5]

### A.    The Property Was Appraised

While the partition suit was pending, Atkinson alleged that Evans and Rossi "executed and delivered easement agreements in favor of a third-party pipeline company believed to be Silver Hill Energy Partners, LP," without Atkinson's consent or ratification.  Even so, Atkinson informed the trial court that she "d[id] not oppose the appointment of Blair Abney of Abney

---

[3]While Atkinson raises only three points of error in her brief, she has made several general due process complaints about the procedural steps taken in this partition action.  She also generally complains that the trial court forced her to represent herself after her third counsel withdrew.  Although we need not address improperly briefed general complaints for reasons fully explained below, we find that the factual and procedural history of the case resolves many of Atkinson's general complaints.  Accordingly, for both Atkinson and the reader, we discuss both the factual and procedural history of the case.

[4]Mineral rights are not included in our description of the Property.

[5]In the proceedings below, the parties agreed that the Property was governed by Chapter 23A of the Texas Property Code.

Valuation Group, LLC to appraise the real estate value of the Property," in preparation for the partition, but reserved her right to challenge his valuation determination. Atkinson also sought the appointment of a timber appraiser since she and her sisters had planted and managed a pine timber plantation on the Property.

The trial court appointed Abney as a disinterested real estate appraiser and Tom Holland as "a disinterested timber professional qualified to perform the timber evaluation" sought by Atkinson. Once the appraisals were complete, Evans and Rossi filed them with the trial court. Abney appraised the Property as a vacant tract of land and concluded that its fair market value was $570,000.00. Holland determined that the Property's "[b]are [l]and" value was $243,660.00, that the value of merchantable timber was $35,619.00, and that the total land and timber value was $279,279.00.

Atkinson objected to both appraisals because they were not directly filed by the appraisers but were instead filed by Evans and Rossi. *See* TEX. PROP. CODE ANN. § 23A.006(d) (providing that, "[o]n completion of the appraisal, the appraiser shall file a sworn or verified appraisal with the court"). Atkinson further objected because Section 23A.006(d) required appointment of "a disinterested real estate appraiser," but Abney's appraisal reflected (1) that it was prepared at the request of Land Endeavors, LLC, which was originally a party-plaintiff but was no longer a party and (2) that Evans paid part of Abney's invoice. *See id.* Atkinson also argued that Holland's appraisal was addressed to Evans and that, although he was not appointed to do so, his appraisal contained an assessment of the fair market value of the land instead of

4

merely the timber value. As a result, Atkinson argued that the appraisals were not made by disinterested persons.

Despite Atkinson's objections to the appraisals, the trial court set a hearing for March 4, 2024, to determine the fair market value of the Property. Atkinson moved to continue the hearing because Evans and Rossi had not supplemented discovery by providing her with documents related to their "purchase of the [P]roperty and their valuation of the [P]roperty, and specifically, closing statements from their purchase of the [P]roperty, and prior appraisals." Evans and Rossi opposed the motion to continue the hearing on the ground that the hearing date "was selected by agreement of the parties" and because Atkinson had "been in possession of Plaintiffs' document production since November 30, 2023." The trial court set Atkinson's motion to continue the hearing for March 1, 2024.

At the March 1 hearing, Atkinson's counsel represented that the Plaintiffs had satisfied "the discovery issues" and withdrew the motion for continuance on that basis. As a result, the parties confirmed that they were available to hold the valuation hearing on March 4.

### B. The Appraisals Were Accepted After No Alternate Valuation Was Introduced

On March 4, Atkinson's counsel stated,

Judge, Your Honor, one matter to take up before we get started. My client after -- if the Court will recall, I moved for a continuance, Mr. Searle obliged with what I was requesting. My client did not necessarily know that that was good enough, and asked me to reurge my motion for continuance on the basis of any offers for, that the plaintiffs have received for selling the [P]roperty, maybe developing this valuation hearing.

5

The trial court denied the oral motion for continuance. After the continuance was denied, Evans and Rossi's counsel urged the trial court to accept Abney's figure of $570,000.00 and Holland's $35,619.00 timber valuation to determine that the fair market value of the Property was $605,619.00. After Atkinson's counsel indicated that there was no evidence of any alternate valuation to introduce at the hearing, the trial court overruled Atkinson's objections to the appraisals, orally determined that the fair market value of the Property was $605,619.00, and signed a written order memorializing that finding.

### C. Atkinson Decided Not to Purchase Evans's and Rossi's Interests

The trial court then sent written notice informing Atkinson of the cotenant buyout provisions of Section 23A.007. *See* TEX. PROP. CODE ANN. § 23A.007. Because Atkinson did not wish to participate in a cotenant buyout, the trial court sent notice of an April 25, 2024, hearing to appoint commissioners and a surveyor to assist in partitioning the Property in kind. *See* TEX. PROP. CODE ANN. §§ 23A.005, 23A.007(d)(3), 23A.008(a).

### D. Atkinson's Third Counsel Withdrew

On April 22, the trial court granted Atkinson's motion to substitute counsel, and counsel filed a motion to dismiss the case alleging that the county court at law lacked subject-matter jurisdiction because the amount in controversy exceeded $250,000.00.[6] Atkinson also filed a motion to continue the hearing and stay the matter pending the trial court's decision on its motion to dismiss the case. The trial court reset the April 25 hearing to May 9, but counsel filed another motion to continue the case. At the May 9 hearing, the trial court heard Atkinson's plea

---

[6]We addressed the threshold jurisdictional issue in Atkinson's prior appeal in this case in our cause number 06-24-00024-CV.

6

to the jurisdiction and denied it but granted the motion to continue the hearing to appoint commissioners and a surveyor "for two weeks from [May 9]." Before that time expired, Atkinson's counsel filed a motion to withdraw, which was heard on May 23.

After Atkinson's counsel informed the trial court that he and Atkinson had "significantly divergent assessments of the case" and that he had given Atkinson "advanced notice of [his] intent to withdraw, giving her reasonable time to employ new counsel." Atkinson opposed the motion to withdraw and said she had been looking for "competent counsel in Panola County" since April 26, had spoken to "at least 60 different attorneys," but was unable to find representation. The trial court noted that Atkinson's current counsel was the third counsel hired "in this case [that had] been on file in less than one year" and granted counsel's motion to withdraw. The trial court then explained that the next hearing would determine whether the Property could be partitioned in kind or would have to be partitioned by sale and notified Atkinson that the hearing would be set for June 3. Atkinson objected to the hearing date on the ground that she would not be able to employ counsel by then, but the trial court said, "[I]t doesn't sound to me like you're going to have counsel in place by any date[,] [s]o we're not going to delay this anymore." Accordingly, on May 24, the trial court set notice of the June 3 hearing date and allowed Atkinson to appear via Zoom.

On May 29, Atkinson, an attorney licensed in California, filed a pro se verified motion for continuance complaining that she had just accepted a job offer that would start on June 10 and stating that she did not wish to represent herself. The trial court denied the motion for continuance on May 31.

7

## E.     Atkinson Represented Herself at the Partition Hearing

At the June 3 hearing, Evans and Rossi announced they were ready, but Atkinson, who appeared in-person, objected and stated that she was "not ready for trial, but w[ould] do the best that she c[ould] given the time that she was allotted." Atkinson then made an opening statement and, for the first time, moved for a partition by sale.

Evans testified that the shape of the Property was "basically a rectangle" and that it was able to be partitioned in kind. Rossi also testified that he believed the Property could be partitioned in kind and asked for the trial court to appoint commissioners to assist in doing so. Both Evans and Rossi established that they had acquired a one-third undivided interest in the Property from Atkinson's sisters.[7]

As for Atkinson's arguments about an alleged easement, Evans testified that he had negotiated a right-of-way easement with Ryan Scott, who "was negotiating on behalf of Silver Hill representing Agua Plata," and had been paid over $37,00.00 by Silver Hill in July 2023. During Atkinson's cross-examination, Rossi testified that Silver Hill paid him over $37,000.00 in exchange for a right-of-way interest on his undivided one-third share so that it could build a water pipeline, but that Silver Hill had decided not to do so. The record shows that Agua Plata, LLC, a subsidiary of Silver Hill, obtained right-of-way easements from Evans and Rossi for constructing, maintaining, and operating a pipeline across the Property, but had decided not to build the pipeline since Atkinson did not accept an offer to negotiate easement rights. As a

---

[7]The sisters reserved their mineral rights, which are not at issue in this case.

result, Agua Plata did not file the right-of-way easements with the Panola County clerk and, instead, filed a formal release relinquishing all interests to the Property.

Atkinson called Phillip Kirklin as a witness to support her defense. Kirklin, a project manager for Roca Land and Right-of-Way, testified that Roca Land was representing Silver Hill and Agua Plata on several land deals. Kirklin testified that he supervised Scott, who worked with Evans and Rossi to obtain easements for the pipeline, and that the pipeline was complete, but was "not going to be put on the property." Kirklin testified that Roca Land made Atkinson an offer and that she "declined, so [they] moved on." According to Kirklin, Agua Plata released its easement rights and determined it was "not going to use it."

After Kirklin's testimony, Atkinson called herself as a witness, but the trial was continued due to time constraints. When the trial resumed, Atkinson appeared via Zoom and testified that the Property had remained in her family for generations and had special sentimental value to her. Atkinson believed that the fair market value of the Property would decline if partitioned because it was a well-known fact in the timber industry that, "when a tract gets to be around a hundred acres or less, it becomes very difficult in getting timber cutters and foresters and property managers" interested in a property. As a result, Atkinson opined that partition would diminish the value of the Property as a timber investment, which was how the Property had been used for thirty-eight years. Accordingly, she preferred for the Property to be sold as a whole to obtain "a better price in total."

Even so, Atkinson testified that, if the trial court was going to partition the Property in kind, the only way she thought was fair was "to give them the eastern side" while providing her

with an "an access point on the front western side." Atkinson testified that Evans and Rossi had many dealings together and had asked for contiguous parcels so that they would have over 100 acres, which was over the "threshold of where it's too dinky to deal with," while Atkinson would have a much-smaller portion. Atkinson noted that the Property was under active oil and gas leases with operating wells, gates and fences, and collection tanks on the Property, which would lead to "operational costs and impacts" if the Property were divided. She also said that her sisters and mother had "rights to the surface through their mineral estate, because they have a dominant ability to use the surface to explore and develop the minerals."

### F. The Trial Court Entered a Decree of Partition in Kind

In its decree of partition, the trial court found that Evans, Rossi, and Atkinson each had an undivided one-third interest in the Property, that the Property was susceptible to partition in kind, and that, to the extent possible, Evans and Rossi would receive contiguous parcels. In order to assist in the partition, the trial court appointed Jackie Roberts as a surveyor and Karen Bagley, Lin Joffrion, and Phil Grimes as three disinterested commissioners.[8]

## II. Atkinson Did Not Preserve Her Unclean-Hands Complaints

In her first point of error, Atkinson argues that the Appellees had unclean hands because they drafted the portion of the partition decree stating that she appeared and announced ready for trial. Atkinson argues in her brief that she was simply not prepared for trial. Based on that, Atkinson argues that Appellees had unclean hands. Atkinson acknowledges that there is no

---

[8]On Atkinson's request, the trial court issued findings of fact supporting its decree.

ruling from the trial court related to unclean hands.  As a result, we find that Atkinson failed to preserve this issue for our review.

For Atkinson to have preserved error, the record must have shown that she made her unclean-hands complaint to the trial court in a timely manner and that the trial court ruled on that complaint.  *See* TEX. R. APP. P. 33.1.  Here, Atkinson acknowledges, and our appellate record shows, that the trial court neither heard nor ruled on the specific unclean-hands complaint that Atkinson makes on appeal.  As a result, we find the issue unpreserved.

Atkinson also argues that Evans and Rossi's partition action was barred because their failure to disclose the easements to Silver Hill precluded recovery.  "It is well-settled that a party seeking an equitable remedy must do equity and come to court with clean hands."  *Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988).  Even so, "unclean hands is an affirmative defense that must be plead or it is waived."  *Kelly v. Tracy*, No. 01-18-00913-CV, 2022 WL 2837335, at *11 (Tex. App.—Houston [1st Dist.] July 21, 2022, no pet.) (mem. op.) (citing TEX. R. CIV. P. 94); *see Peace v. PNC Bank Nat'l Ass'n*, No. 06-20-00097-CV, 2021 WL 5441113, at *7 (Tex. App.—Texarkana Nov. 22, 2021, no pet.) (mem. op.).  Atkinson did not file an answer raising unclean hands as an affirmative defense.[9]

We overrule Atkinson's first point of error.

---

[9]As a result of our ruling, we need not address Atkinson's laundry-list of alleged misrepresentations and complaints against opposing counsel.

**III. Legally Sufficient Evidence Supported the Trial Court's Decree of Partition**

Atkinson argues that the trial court's findings (1) that the parties each had an undivided one-third interest in the Property and (2) that the Property was susceptible to partition in kind were not based on legally sufficient evidence.[10] We disagree.

"Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's answers to jury questions." *Alvizo v. Walker*, No. 06-22-00025-CV, 2023 WL 105117, at *2 (Tex. App.—Texarkana Jan. 5, 2023, no pet.) (mem. op.) (quoting *Monasco v. Gilmer Boating & Fishing Club*, 339 S.W.3d 828, 830 (Tex. App.—Texarkana 2011, no pet.) (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam))). "In reviewing a legal sufficiency complaint of an adverse finding on which the appellant did not have the burden of proof, the appellant must demonstrate on appeal that no evidence supports the adverse finding." *Id.* (quoting *Monasco*, 339 S.W.3d at 830 (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983))). Atkinson's challenge can only be sustained if the record shows:

> (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence established conclusively the opposite of a vital fact.

*Id.* at *3 (quoting *Monasco*, 339 S.W.3d at 830 (citing *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997))). "If the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence, more than a scintilla of evidence exists." *Id.* (quoting *Monasco*, 339 S.W.3d at 830 (citing *Burroughs Wellcome v. Crye*, 907

---

[10]Atkinson makes no complaint related to factual sufficiency of the evidence.

S.W.2d 497, 499 (Tex. 1995))). "In our legal sufficiency review, we 'consider only the evidence and inferences that when viewed in their most favorable light, tend to support the finding. All evidence and inferences to the contrary are disregarded.'" *Id.* (quoting *In re Estate of Butler*, No. 06-00-00094-CV, 2001 WL 703859, at *2 (Tex. App.—Texarkana June 22, 2001, pet. denied) (not designated for publication) (citing *Havner v. E-Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex. 1992))).

The recitation of facts above demonstrates that the trial court had ample evidence to find that Evans, Rossi, and Atkinson each had an undivided one-third interest in the Property. The last will and testament of Atkinson's father shows that he bequeathed an undivided one-third interest in the Property to Atkinson and each of her two sisters. Evans introduced a deed showing that Brenda sold her undivided-one third interest to him. Rossi introduced deeds showing that Sherry sold and deeded her undivided one-third interest in the Property to Land Endeavors, LLC, which in turn transferred its interest to Rossi. As a result, legally sufficient evidence supported the trial court's finding that the parties each had an undivided one-third interest in the Property.[11]

---

[11]Atkinson argues that Evans and Rossi failed to state a claim because their petition did not allege that they had equal possessory interests. We overrule that complaint since their petition alleged the following:

The interest owned by each of the Plaintiffs and Defendant in the Property is believed to be as follows:

    a.      Plaintiff Allen L. Evans owns an undivided 1/3 interest in the Property.

    b.      Plaintiff Jay Rossi owns an undivided 1/3 interest in the Property.

    c.      Defendant Paula Atkinson owns an undivided 1/3 interest in the Property.

Next, Atkinson argues that legally sufficient evidence did not support the trial court's finding that the Property was susceptible to partition in kind. "Texas law 'favors partition in kind over partition by sale.'" *Champion v. Robinson*, 392 S.W.3d 118, 123 (Tex. App.—Texarkana 2012, pet. denied) (quoting *Cecola v. Ruley*, 12 S.W.3d 848, 853 (Tex. App.—Texarkana 2000, no pet.), *superseded by statute on other grounds*). For this reason, Section 23A.008 states that, where, as here, the buyout procedures of the Act are unsuccessful, i.e., if "a cotenant remains that has requested partition in kind, the court shall order partition in kind unless the court, after consideration of the factors listed in Section 23A.009, finds that partition in kind will result in substantial prejudice to the cotenants as a group." TEX. PROP. CODE ANN. § 23A.008.

Section 23A.009 provides that the trial court consider the following factors in determining if "partition in kind w[ill] result in substantial prejudice" to the group of cotenants:

> (1)  whether the heirs' property practicably can be divided among the cotenants;
>
> (2)  whether partition in kind would apportion the property in such a way that the aggregate fair market value of the parcels resulting from the division would be materially less than the value of the property if the property were sold as a whole, taking into account the condition under which a court-ordered sale likely would occur;
>
> (3)  evidence of the collective duration of ownership or possession of the property by a cotenant and one or more predecessors in title or predecessors in possession to the cotenant who are or were relatives of the cotenant or each other;

---

To the extent Atkinson argues that the petition should have specified that the interests were only in the surface estate, the record shows that the parties understood that only the surface estate was at issue since the sisters reserved their mineral interests in the deeds to Evans and Rossi. For that reason, the trial court's decree of partition focused only on the surface estate.

(4)     a cotenant's sentimental attachment to the property, including any attachment arising because the property has ancestral or other unique or special value to the cotenant;

(5)     the lawful use being made of the property by a cotenant and the degree to which the cotenant would be harmed if the cotenant could not continue the same use of the property;

(6)     the degree to which the cotenants have contributed the cotenants' pro rata share of the property taxes, insurance, and other expenses associated with maintaining ownership of the property or have contributed to the physical improvement, maintenance, or upkeep of the property; and

(7)     any other relevant factor.

TEX. PROP. CODE ANN. § 23A.009(a). Also, "[t]he court may not consider any one factor . . . to be dispositive without weighing the totality of all relevant factors and circumstances." TEX. PROP. CODE ANN. § 23A.009(b).

As for the first two factors, the appraisals for the Property indicated that there was no home on the Property and that it was a vacant tract of land in an area that was not zoned. Holland's appraisal shows that the Property was "fully wooded with a mixture of plantation pine and mixed timber." The trial court heard testimony and viewed appraisal maps showing that the Property was shaped as a rectangle and, according to Evans and Rossi, could practicably be divided in kind. Although Atkinson opined that partition would result in less value to the Property as a whole because parcels under fifty acres did not garner as much interest in the timber industry, Atkinson offered no evidence to show that a division in kind would result in materially less value than her one-third portion of proceeds of any partition by sale. Moreover, the highest and best use of the Property was not as a timber farm, but was instead described as "[r]ecreational, rural residential and agricultural use."

15

Under the third factor, the trial court heard evidence that the Property was used by Atkinson and her sisters as a timber investment before her sisters deeded the Property to Evans and Rossi, and nothing shows that Atkinson would be unable to use her portion of the Property for the same purpose if partitioned in kind. Although Atkinson testified that she had a sentimental attachment to the Property under the fourth factor, the trial court was free to discount such testimony since Atkinson was advocating for the sale of the Property outright instead of maintaining a one-third undivided interest by partitioning the Property in kind. As for the fifth factor, Atkinson argued that the lawful use of the mineral estate would be affected by a partition in kind, but "[i]t is presumed, in the absence of proof to the contrary, that minerals are equally distributed and that a partition-in-kind will not result in an inequitable distribution of the mineral estate," and Atkinson offered no evidence to rebut that presumption. *See Daven Corp. v. Tarh E & P Holdings, L.P.*, 441 S.W.3d 770, 777 (Tex. App.—San Antonio 2014, pet. denied) (citing *Champion*, 392 S.W.3d at 125). As for the sixth factor, the trial court did not hear evidence regarding property taxes, insurance, or upkeep of the Property.

As for any other factors impacting the trial court's decision, the trial court heard that the Property contained some wetland, was subject to rights-of-way and/or easements related to oil and gas leases, had a fence around its perimeter built by Atkinson's father, and only had two access points. Even so, "[t]he party opposing the partition-in-kind has the burden to prove that the property is not subject to a fair division and is thus incapable of partition-in-kind."[12] *Id.*

---

[12]Atkinson argues that she was entitled to protection from the trial court since she was the only heir involved in the partition. She received the protection of having the opportunity for a cotenant buyout. Because she did not take advantage of the buyout provision, the only question before the trial court was whether to effectuate a partition in kind, which Texas law prefers, or a partition by sale.

16

(citing *Champion*, 392 S.W.3d at 123). The trial court could have found that Atkinson did not meet that burden since she described the portion of the Property she wished to receive in kind and informed the trial court that she sought a greater physical share with an access point. Under Section 23A.005, Atkinson's arguments would be considered by the commissioners appointed in the trial court's decree of partition, who are tasked with dividing the Property, so each individual share is equal in value or as equal in value as possible. *See* TEX. PROP. CODE ANN. § 23A.005; TEX. R. CIV. P. 761, 768.[13]

We find that the totality of the evidence, viewed in the light most favorable to the trial court's ruling, was legally sufficient for the trial court to conclude that partition in kind would not result in substantial prejudice to Atkinson, Evans, and Rossi as a group. As a result, we overrule Atkinson's second point of error.[14]

## IV. Atkinson's Remaining Points Are Inadequately Briefed

In her third point, Atkinson argues that the trial court erred by stating that she announced ready, but she does not discuss in her brief how she was harmed by that finding in light of her statement at trial that she "w[ould] do the best that she c[ould] given the time that she was

---

[13]Atkinson makes several arguments related to the Silver Hill/Agua Plata easements, but the trial court had ample evidence before it showing that those easements were not recorded and were relinquished. To the extent Atkinson argues that any alleged easement placed a cloud on the title, no trespass to try title claims were timely raised in this partition suit. Atkinson also argues that the trial court failed to instruct the commissioners how to account for the alleged easements but that issue is premature and reserved for the commissioners.

[14]Atkinson also raises several complaints about the trial court's letter ruling, which does not constitute a final judgment or an appealable interlocutory order. *See Gregory v. Foster*, 35 S.W.3d 255, 257 (Tex. App.—Texarkana 2000, no pet.). These complaints "are moot since the trial court subsequently entered a final order that incorporated the details of the letter ruling." *In re C.A.*, No. 10-16-00351-CV, 2021 WL 409621, at *4 (Tex. App.—Waco Feb. 3, 2021, no pet.) (mem. op.) (citing *Mauldin v. Clements*, 428 S.W.3d 247, 261–62 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("temporary orders superseded by final order"); *Hailey v. KTBS, Inc.*, 935 S.W.2d 857, 859 (Tex. App.—Texarkana 1996, no pet.) ("written order controls over letter")). Accordingly, we overrule Atkinson's complaints about the letter ruling and instead focus on the subsequently issued decree of partition.

allotted." We also note that, throughout her pro se brief, Atkinson raised many multifarious complaints about the trial court.

"[P]*ro se* litigants are held to the same standards as licensed attorneys and must comply with all applicable rules of procedure." *Manning v. Johnson*, 642 S.W.3d 871, 884 (Tex. App.—Texarkana 2021, no pet.) (quoting *In re C.N.M.*, No. 10-10-00178-CV, 2011 WL 1049383, at *1 (Tex. App.—Waco Mar. 23, 2011, no pet.) (mem. op.)). "A pro se litigant is required to properly present h[er] case on appeal just as [s]he is required to do at the trial court." *Id.* (quoting *In re C.N.M.*, 2011 WL 1049383, at *1). "We have repeatedly warned [appellants] to refrain from raising multifarious points of error." *Hartwell v. Lone Star, PCA*, 528 S.W.3d 750, 763 n.10 (Tex. App.—Texarkana 2017, pet. dism'd) (citing *In re Guardianship of Moon*, 216 S.W.3d 506, 508 (Tex. App.—Texarkana 2007, no pet.)). "Failure to heed our warnings runs the risk of having any multifarious issue(s) being summarily overruled." *Id.* "Bare assertions of error" like the ones presented in the multifarious portions of Atkinson's brief, "without argument or authority, waive error." *Id.* (quoting *In re Est. of Curtis*, 465 S.W.3d 357, 379 (Tex. App.—Texarkana 2015, pet. dism'd). Moreover, we have "no duty to perform an independent review of the record and applicable law to determine whether there was error." *Manning*, 642 S.W.3d at 884 (quoting *In re C.N.M.*, 2011 WL 1049383, at *1). "Were we to do so, even on behalf of a *pro se* litigant, we would be forced to stray from our role as neutral adjudicators and become an advocate for that party." *Id.* (quoting *In re C.N.M.*, 2011 WL 1049383, at *1). We overrule Atkinson's laundry list of multifarious complaints.

18

As for what Atkinson labeled as her third point of error—the trial court's statement in the decree that she announced ready—"[t]he Texas Rules of Appellate Procedure control the required contents and organization for an appellant's brief." *Id.* (quoting *Delta Cnty. Appraisal Dist. v. PPF Gin & Warehouse, LLC*, 632 S.W.3d 637, 652 (Tex. App.—Texarkana 2021, pet. denied)). "In order to avoid forfeiting a legal argument for inadequate briefing, an appellant's brief must contain 'a clear and concise argument for the contentions made, with appropriate citations to authorities and the record.'" *Id.* (quoting *PPF Gin & Warehouse, LLC*, 632 S.W.3d at 652) (quoting TEX. R. APP. P. 38.1(i)). "Failure to cite legal authority or provide substantive analysis of the legal issues presented results in waiver of the complaint." *Id.* (quoting *PPF Gin & Warehouse, LLC*, 632 S.W.3d at 652 (quoting TEX. R. APP. P. 38.1(i))). Atkinson fails to provide in her brief any legal authority or substantive analysis of her third point of error. "Further, 'it is not the role of this court to conduct harm analysis absent some cogent argument on [appellant]'s part.'" *In re B.B.*, No. 06-22-00029-CV, 2022 WL 5237405, at *5 (Tex. App.—Texarkana Oct. 6, 2022, pet. denied) (mem. op.) (quoting *Yarbrough v. ELC Energy, LLC*, No. 12-15-00303-CV, 2017 WL 2351357, at *11 (Tex. App.—Tyler May 31, 2017, no pet.) (mem. op.)). We find Atkinson's third point of error inadequately briefed and overrule it.[15]

---

[15]Atkinson raises a laundry list of alleged actions by the trial court that are "deeply troubling and demonstrate[] a bias so deep as to justify disqualification" of the trial court. The record establishes that Atkinson never raised the issue of bias below and never filed a motion to recuse. *See Martin v. Paris*, No. 06-10-00037-CV, 2011 WL 766653, at *5 (Tex. App.—Texarkana Mar. 4, 2011, no pet.) (mem. op.) (citing TEX. R. APP. P. 33.1). Atkinson also raises several due process complaints taking issue with how the trial court conducted the trial. For example, Atkinson complains of the trial court's restrictions at trial that, in our view, were designed to keep Atkinson on topic during trial. Although she complains that she did not wish to represent herself, Atkinson does not raise any point of error properly challenging the trial court's continuance rulings. We find Atkinson's alleged due process complaints involving the natural consequences of her pro se representation inadequately briefed. *See Paselk v. Raburn*, 293 S.W.3d 600, 613 (Tex. App.—Texarkana 2009, pet. denied).

## V.  Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:  April 7, 2025
Date Decided:  June 27, 2025