

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00024-CV

PAULA ATKINSON, Appellant

V.

LAND ENDEAVORS, LLC, AND ALLEN L. EVANS, Appellees

On Appeal from the County Court at Law
Panola County, Texas
Trial Court No. 2023-089

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens
Concurring Opinion by Justice Rambin

# MEMORANDUM OPINION

This appeal addresses whether a trial court's determination of fair market value of heirs' property under Section 23A.006 the Uniform Partition of Heirs' Property Act (the UPHPA) is a final, appealable order.  *See* TEX. PROP. CODE ANN. § 23A.006.  We conclude that it is not, and we dismiss the appeal for lack of jurisdiction.

## I.      Background

Paula Atkinson and her two sisters each inherited an undivided interest in the surface estate and one-half of the mineral estate of 162.44 acres located in Panola County, Texas (the Property), when their father died in 1986.[1]  Following their father's death, the sisters treated the Property as a "timber investment property."  In 2022, one of Atkinson's sisters sold her interest in the Property to Appellee Jay Rossi's predecessor-in-interest, Land Endeavors, LLC, and Atkinson's other sister sold her interest in the Property to Appellee Allen L. Evans.

After acquiring their interests, Rossi and Evans sued Atkinson for partition of the Property under the UPHPA.[2,3]  While the case was pending, Rossi and Allen signed right-of-way agreements with Agua Plata, LLC, to allow a pipeline easement on the Property, for which they were each paid $37,210.46.  Rossi and Evans later filed a motion to appoint a surveyor and an appraiser.  Atkinson objected to the appointments as premature due to the right-of-way

---

[1]We express no opinion as to the ownership of the mineral interests in the Property, nor do we address the partition of the mineral interests, as the mineral estate had previously been severed from the surface estate.  Appellees did not seek to partition the mineral interest through their partition suit, and the trial court limited its partition of the Property to the surface estate.

[2]TEX. PROP. CODE ANN. §§ 23A.001–.013.

[3]The parties do not dispute the application of the UPHPA.

2

agreements. Atkinson claimed Agua Plata might be a necessary party to the partition and that the right-of-way agreements had clouded the title of the Property and affected determination of the Property's fair market value.

After a hearing, the trial court found the Property to be heirs' property under the UPHPA, appointed real estate and timber appraisers to prepare an appraisal of the Property, and clarified that it would set a future hearing to determine the fair market value of the Property. The order further stated no party had yet requested a partition by sale but made no definitive determination as to how to partition the Property. Atkinson filed written objections to the appraisal alleging (1) that the timber appraiser had valued the fair market value of the Property even though he was only appointed to value the timber, (2) that, while Section 23A.006(e) required the appraiser to file the independent appraisal, Rossi and Evans had filed the appraisals, and, (3) that the appraisals had not taken into account the effect of the right-of-way agreements on the value of the Property. *See* TEX. PROP. CODE ANN. § 23A.006(e).

The trial court overruled Atkinson's objections at a "determination of value" hearing. At the hearing, Atkinson's counsel informed the trial court that Atkinson believed the appraised value was too low and the price per acre was closer to the upper end of the per-acre range determined by the real estate appraiser than the mid-range number the appraiser utilized. Atkinson expressed a desire to put her opinion regarding valuation on the record, but when offered the opportunity to put anything on the record, she did not call any witnesses.

Considering that no party had timely requested partition by sale[4], the trial court questioned whether its appraisal would "even have any bearing" on the partition procedure since Atkinson did not intend to take advantage of Chapter 23A of the Texas Property Code's cotenant buyout procedures. *See* TEX. PROP. CODE ANN. § 23A.007. Atkinson objected to the trial court's proceeding with the appointment of commissioners and stated that she had "not made her determination of any kind in the sale." The trial court accepted the appraisers' valuations and signed an order setting the fair market value of the Property at $605,619.00 (the FMV Order).

Atkinson appeals.

## II.     Issues on Appeal

In four issues, Atkinson asks (1) whether the trial court had subject-matter jurisdiction over the partition suit, (2) whether the FMV Order is an appealable final order, (3) whether the trial court erred in determining the fair market value of the property, among other things, and (4) whether the cumulative errors by the trial court have been harmful and prejudicial.

## III.     Subject-Matter Jurisdiction

"Whether a court has subject matter jurisdiction is a question of law we review de novo." *Tex. Disposal Sys. Landfill, Inc. v. Travis Cent. Appraisal Dist.*, 694 S.W.3d 752, 757 (Tex. 2024).

First, Atkinson urges that the trial court lacked subject-matter jurisdiction because the Property's fair market value exceeded the trial court's amount-in-controversy limit. Atkinson

---

[4]Atkinson later filed an election of partition by sale well after the forty-five-day deadline for a party to notify the court of its intention to purchase the interest of a party that requested partition by sale, allowing a continuation of the cotenant buyout process, which is necessarily premised on a party having requested partition by sale, making Atkinson's election untimely. *See* TEX. PROP. CODE ANN. § 23A.007.

4

bases this argument on Section 25.003(c)(1) of the Texas Government Code, which establishes the amount-in-controversy limit for statutory county courts[5] at $250,000.00, well below the fair market value of the Property. *See* TEX. GOV'T CODE ANN. § 25.0003(c)(1). In support of her position, Atkinson cites *Eris v. Giannakopoulos*, 369 S.W.3d 618, 622 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd).

In *Eris*, our sister court determined that a Harris County statutory county court had jurisdiction over the underlying partition suit only "so long as the action [wa]s within the amount-in-controversy range over which Harris County courts at law have concurrent jurisdiction with district courts." *Id.* at 621. But *Eris* does not apply here, because Harris County and Panola County have separate statutes that govern their jurisdictional limits.

For example, statutory county courts in Harris County have the same jurisdiction "prescribed by law for county courts," which would include Section 23.002(a)'s $250,000 amount-in-controversy limit. TEX. GOV'T CODE ANN. § 25.1032(a). Yet, a Panola County statutory county court has no such limitation. Rather, the Panola County jurisdictional statute specifies that the trial court, which is a statutory county court, "has concurrent jurisdiction with the district court." TEX. GOV'T CODE ANN. § 25.1852(a). "In addition to the jurisdiction provided by Section 25.0003 and other law," Section 25.1852(a) grants to any county court at law in Panola County "concurrent jurisdiction with the district court" "notwithstanding any law granting exclusive jurisdiction to the district court." *Id.*

---

[5]Statutory county courts are also referred to as county courts at law.

To the extent that a "specific [jurisdictional] provision for a particular court or county" conflicts with a general jurisdictional provision in Chapter 25 of the Texas Government Code, "the specific provision controls." TEX. GOV'T CODE ANN. § 25.0001(a). Accordingly, since the trial court had concurrent jurisdiction with the district court, which had no amount-in-controversy limit, the trial court had subject-matter jurisdiction over the partition suit. *See* TEX. GOV'T CODE ANN. §§ 24.007(b), 25.1852(a); TEX. PROP. CODE ANN. § 23.002(a).

Next, Atkinson questions whether the parties' lack of equal possessory interests defeated the trial court's subject-matter jurisdiction. "A joint owner or claimant of real property . . . may compel a partition of . . . the property among the joint owners . . . ." TEX. PROP. CODE ANN. § 23.001. One of the three prerequisites necessary to force a partition is "the party seeking the partition must have an equal right to possess the land with the other joint owners." *See First Nat'l Bank in Dallas v. Tex. Fed. Sav. & Loan Ass'n*, 628 S.W.2d 497, 498 (Tex. App.—Texarkana 1982, writ ref'd n.r.e.) (decided under prior statute); *cf. Trevino v. Trevino*, 64 S.W.3d 166, 171 (Tex. App.—San Antonio 2001, no pet.) ("[A partition] plaintiff need only establish that he owns an interest in the property and has a right to possession of a portion thereof." (citing TEX. PROP. CODE ANN. § 23.001; *Manchaca v. Martinez*, 148 S.W.2d 391, 391 (Tex. 1941))).

Atkinson claims Appellees did not prove their entitlement to partition because the parties lacked equal possessory interests due to differences in ingress and egress rights to the surface relating to the mineral estate. Yet, an equal right to possess an undivided parcel of land is not the same as an equal interest in the land, and the UPHPA does not require a finding that cotenants

6

have the same interest in land prior to partition. This is because a property is heirs' property under the statute if property is "held in tenancy in common" and, among other things,

(C) any of the following applies:

(i) 20 percent or more of the interests are held by cotenants who are relatives;

(ii) 20 percent or more of the interests are held by an individual who acquired title from a relative, whether living or deceased; or

(iii) 20 percent or more of the cotenants are relatives.

TEX. PROP. CODE ANN. § 23A.002(5). Simply put, lack of an equal interest does not defeat the trial court's jurisdiction.[6]

Lastly, Atkinson claims that "[t]he [t]rial [c]ourt lack[ed] subject matter jurisdiction because necessary parties were not included" in the suit. But "joinder [of parties] does not affect a trial court's subject matter jurisdiction." *City of Amarillo v. Nurek*, 546 S.W.3d 428, 438 (Tex. App.—Amarillo 2018, no pet.) (citing *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 162 (Tex. 2004)).

Having determined the trial court had subject-matter jurisdiction over this case, we overrule Atkinson's subject-matter-jurisdiction complaint.

## IV. Appealability of Partition Judgments

Next, we must now determine whether our Court has jurisdiction to hear Atkinson's appeal from the trial court's order determining the fair market value of the Property. Atkinson proposes that the question of appealability of the trial court's FMV Order is one of first

---

[6]Also, as stated above, Appellees did not claim ownership in the mineral estate. They sought to partition only the surface estate, and the trial court limited its partition to the surface estate.

7

impression in our State, and, on this point, we agree. Neither party has cited, and we have not found, Texas authority determining this issue.

Even so, with certain exceptions, appeals may be taken only from "final decrees and judgments." *Indus. Specialists, LLC v. Blanchard Refin. Co.*, 652 S.W.3d 11, 13 (Tex. 2022) (quoting Judiciary Act of 1789, ch. XX, § 22, 1 Stat. 73, 84 (codified at 28 U.S.C. § 1291 (2012))). This "final-judgment rule" has been continually narrowed by the Texas Legislature over the last forty years, as the Legislature initially codified four interlocutory appellate rights in 1985, and, by the end of the 87th Legislative Session in 2021, that number had grown to seventeen. *Id.* at 14 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)). The Legislature has additionally created a permissive appeal provision under which an appellate court may accept the appeal of an interlocutory order that a trial court has previously authorized. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d), (f) (Supp.). The Texas Supreme Court has recognized "the shifting legal landscape" narrowing the final-judgment rule and has observed that "the practice of '[l]imiting appeals to final judgments can no longer be said to be the general rule.'" *Indus. Specialists, LLC*, 652 S.W.3d at 14 (alteration in original) (quoting *Dallas Symphony Ass'n v. Reyes*, 571 S.W.3d 753, 759 (Tex. 2019)).

An additional deviation from the final-judgment rule exists in certain types of proceedings in which more than one final, appealable judgment may be rendered, including partition suits. *See Griffin v. Wolfe*, 610 S.W.2d 466, 466 (Tex. 1980) (per curiam). "Unlike most other proceedings, a partition case involves two or more final appealable orders." *John Deere Constr. & Forestry Co. v. Rodriguez*, No. 14-24-00030-CV, 2025 WL 1461152, at *2 n.3

8

(Tex. App.—Houston [14th Dist.] May 22, 2025, no pet. h.) (citing *Griffin*, 610 S.W.2d at 466–67; *Est. Land Co. v. Wiese*, 546 S.W.3d 322, 325–26 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *Fry Sons Ranch, Inc. v. Fry*, No. 03-19-00684-CV, 2020 WL 6685772, at *2 (Tex. App.—Austin Nov. 13, 2020, pet. denied) (mem. op.)). "[A] partition proceeding is—at least—a two-step process." *Id.* (alteration in original) (quoting *Long v. Spencer*, 137 S.W.3d 923, 925 (Tex. App.—Dallas 2004, no pet.) (citing *Carr v. Langford*, 144 S.W.2d 612, 613 (Tex. App.—Dallas 1940), *aff'd*, 159 S.W.2d 107, 108 (Tex. 1942)); TEX. R. CIV. P. 760 ("court shall determine share or interest of each claimant and all questions affecting title to property"); TEX. R. CIV. P. 761 ("court shall determine whether property is subject to partition in kind"))). "An appeal at each step 'provides a practical way to review controlling, intermediate decisions before the consequences of any error do irreparable injury.'" *Id.* (quoting *Long*, 137 S.W.3d at 926). "A partition order that disposes of all issues in a discrete phase of the proceeding must be appealed immediately under the usual time periods governing appeals; issues determined by the order cannot be attacked collaterally after a later order or judgment is signed." *Id.* (citing *Wiese*, 546 S.W.3d at 325–26; *Long*, 137 S.W.3d at 925–26).

In proceedings with more than one appealable judgment, each of the multiple judgments is sometimes said to have "resolve[d] a discreet issue" in the proceeding, making that judgment appealable. *Huston v. Fed. Dep. Ins. Corp.*, 800 S.W.2d 845, 847 (Tex. 1990) (receivership); *see De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006) (probate). To determine whether Atkinson has appealed a judgment that resolves a discreet issue, we compare the UPHPA to law related to partition suits under Chapter 23 of the Texas Property Code.

9

### A. Partition Under Chapter 23

Under Chapter 23, "[t]he first judgment, often characterized as preliminary, determines 'the interest of each of the joint owners or claimants, all questions of law affecting the title, and appoints commissioners and gives them appropriate directions.'" *Champion v. Robinson*, 392 S.W.3d 118, 122 n.6 (Tex. App.—Texarkana 2012, pet. denied) (quoting *Ellis v. First City Nat'l Bank*, 864 S.W.2d 555, 557 (Tex. App.—Tyler 1993, no writ)); *see Bowman v. Stephens*, 569 S.W.3d 210, 221–22 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (discussing determinations made during stage one of a partition proceeding under Chapter 23). Our Court has referred to this order after the first stage of a partition suit as the order "decreeing a partition." *Siber v. Devlin*, 508 S.W.2d 658, 663 (Tex. App.—Texarkana 1974, no writ).

"In the second stage [of a Chapter 23 partition proceeding], the commissioners consider the property's characteristics and evaluate objective considerations for dividing the property to retain the partitioned tracts' highest value." *Bowman*, 569 S.W.3d at 222. "The commissioners determine a property division and make a report to the trial court," at which point "any party to the partition suit may file objections." *Id.* Subsequently, the trial court enters its second judgment, which "may approve the commissioner's report and 'set aside to the joint owners or claimants their fractional share or interest in the disputed property in accordance with that report, or it may find the report "to be erroneous in any material respect, or unequal and unjust" and reject it.'" *Id.* (quoting *Bolinger v. Williams*, No. 07-14-00024-CV, 2015 WL 9473924, at *3 (Tex. App.—Amarillo Dec. 21, 2015, no pet.) (mem. op.)).

"Matters that were or should have been decided in the first stage cannot be challenged in an appeal from the second judgment that issues at the completion of the second stage." *Id.*

### B.     Partition Under the UPHPA

Partition suits under the UPHPA follow a different procedure.[7] "[I]f the court determines that the property that is the subject of a partition action is heirs' property," the UPHPA directs that the trial court "shall determine the fair market value of the property" through one of a number of methods, including ordering an appraisal. TEX. PROP. CODE ANN. § 23A.006. Following the determination of fair market value, the trial court is to notify the parties of that value, *id.*, and, "[i]f any cotenant requested partition by sale," the court is to conduct a "cotenant buyout" procedure through which cotenants who did not request partition by sale may buy out the interest of any cotenant who requested partition by sale, TEX. PROP. CODE ANN. § 23A.007. The previously determined fair market value provides the basis for determining the purchase price of that interest, and a cotenant who seeks to purchase that interest pays the apportioned price into the court. *Id.*

If partition is achieved through the cotenant buyout procedure, the trial court is to "issue an order reallocating all the interests of the cotenants" and "disburse the amounts held by the court to the persons entitled to them." TEX. PROP. CODE ANN. § 23A.007(e)(1); *see also* TEX. PROP. CODE ANN. § 23A.007(f) (providing for issuance of an order reallocating interests and disbursement of funds at later stages in the buyout procedure). Depending on the desires of the

---

[7]When a trial court determines that a property is heirs' property as defined by the UPHPA, the UPHPA "supplements [and supersedes to the extent of any inconsistencies] Chapter 23 and the Texas Rules of Civil Procedure governing partition of real property." TEX. PROP. CODE ANN. § 23A.003(b).

11

cotenants and the presence of at least one cotenant wishing to partition by sale, the heirs' property may then be retitled without the need for any further partition procedure, such as appointment of commissioners.

If partition under the UPHPA is not resolved through the cotenant buyout procedure, as in this case, the trial court is directed to partition the property in kind unless, after taking into consideration a statutory list of factors favoring partition in kind, *see* TEX. PROP. CODE ANN. § 23A.009, the trial court "finds that partition in kind will result in substantial prejudice to the cotenants as a group," TEX. PROP. CODE ANN. § 23A.008(a). If the trial court does not partition in kind, the trial court is to partition by sale under Section 23A.010 or dismiss the suit. TEX. PROP. CODE ANN. § 23A.008(b).

### C.    Analysis

"A departure from the final judgment rule in the form of an interlocutory appeal must be strictly construed because it is 'a narrow exception to the general rule that interlocutory orders are not immediately appealable.'" *Sabre Travel Int'l, Ltd. v. Deutsche Lufthansa AG*, 567 S.W.3d 725, 736 (Tex. 2019) (quoting *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011)).

The UPHPA requires determination of the fair market value of the property before any partition decree similar to the initial appealable order under Chapter 23 is rendered. As a result, the determination of value through the issuance of an order such as the FMV Order is a preliminary step in the UPHPA partition process. Here, the FMV Order merely found that the UPHPA applied and determined that the fair market value was $605,619.00. Because Atkinson did not wish to avail herself of the UPHPA cotenant buyout provisions, the trial court questioned

12

whether its fair market value determination mattered. Notably, the FMV Order did not determine that the Property would be partitioned in kind and did not appoint commissioners. Thus, unlike the orders that are appealable under Chapter 23A, the FMV Order (1) did not determine the interest of each of the joint owners or claimants, (2) did not answer all questions of law affecting the title, (3) did not appoint commissioners or give them appropriate directions, and (4) did not contain any approval of a commissioner's report. Instead, our review of the FMV Order shows that no interests of the claimants or parties were determined. *See White v. Mitchell*, 60 Tex. 164, 165 (1883) (describing a partition decree as "final in its character" because it "determined the rights of the respective parties in the [property] of which partition was sought). As a result, the fair market value was simply a preliminary determination that Atkinson would need to pay two-thirds of that amount in order to buy out Rossi and Evans.

We conclude that, under the facts and circumstances of this case, the FMV Order is not a final, appealable order. As a result, we conclude that we have no jurisdiction over the appeal, and we do not reach the remaining issues.

## V.     Conclusion

We dismiss Atkinson's appeal for lack of jurisdiction.


Scott E. Stevens
Chief Justice


13

CONCURRING OPINION

I join in dismissing for lack of jurisdiction, but I would do so because of mootness.

Via this appeal, Atkinson seeks the novel procedural relief of the ability to appeal the trial court's Chapter 23A FMV Order.[8] As the majority notes, Atkinson did not timely invoke the cotenant buyout procedures of Section 23A.007. Indeed, Atkinson did not invoke buyout until June 3, 2024, some three months after the FMV Order she seeks to challenge via this appeal and some two months after her notice of this appeal.[9]

Because Atkinson did not timely invoke buyout, there was no buyout. The facts and circumstances of this case do not involve a party who was actually bought out at a value they believe is too low. Nor do the facts and circumstances involve a party who stood ready to do the buying out but refrained from doing so because the trial court set the value at an amount they believe is too high.[10] Since those facts and circumstances are not present, I do not view the majority as speaking to them. Further, because such facts are not present, that narrows the scope of what is in controversy in this appeal.

---

[8] Atkinson's other issues turn on whether the determination of value is appealable. Consequently, while I agree with the majority's resolution of the other issues, I would not have used this appeal as the vehicle to address them.

[9] I agree with what the majority said in the Background section: "no party had timely requested partition by sale." As a consequence, buyout was not at issue when the FMV Order was entered, nor was it at issue when the notice of this appeal was filed. TEX. PROP. CODE ANN. § 23A.007(a) (conditioning buyout on "[i]f any cotenant requested partition by sale"). For this reason, I respectfully question the majority's assertion that "the fair market value was simply a preliminary determination that Atkinson would need to pay two-thirds of the amount required to buy out Rossi and Evans." Atkinson raised buyout immediately before trial on the Sections 23A.008/23A.009 partitionability inquiry. When buyout was belatedly raised, it was raised in terms of Atkinson wanting to be bought out or wanting the entire property to be sold. It was *not* raised in terms of Atkinson doing the buying out. Regardless of Atkinson's intent, Rossi and Evans did not opt for partition via sale, so Atkinson could not have bought them out, even belatedly, via the procedure of Section 23A.007. Thus, in this case, the buyout discussion is all a matter of a "what if."

[10] For reasons expressed in the immediately preceding footnote, the facts demonstrate that this case does not present what I will call the "frustrated buyer" scenario.

14

Though the trial court's FMV Order did not impact buyout, Atkinson contends that there remains a live controversy to be decided in this appeal. I believe the controversy is presented by Atkinson's second appeal, which we decide today in a companion case.

In this appeal, Atkinson contends that, though there was no buyout, the trial court's fair market value determination *might* impact the subsequent Sections 23A.008/23A.009 partitionability inquiry.

The impact, if any, of the FMV Order on partitionability was a "what if" when the notice of this appeal was filed.[11] The partionability trial had yet to occur. The "what if" has since become a reality. The trial court held a Sections 23A.008/23A.009 partitionability trial. Via a separate appeal, Atkinson appeals the order resulting from that trial.

In the partitionability trial, Atkinson did not challenge the *dollar amount* of the fair market value determined by the trial court. Instead, Atkinson adopted that dollar value and then pointed to the *existence* of the fair market value determination as the reason that partition via sale would be more efficient than partition-in-kind. Atkinson's filing immediately before the partition trial stated: "this request (and all aspects of it) are conditioned on the current Court's finding of the Fair Market Value of the (surface estate) at $605,619 per Order dated March 4, 2024." Atkinson followed that up with an oral request to the trial court:

---

[11]Imagine freezing the trial proceedings at the instant the notice of this appeal was filed. Proceed, then, with this appeal. In such a scenario, we would be wrestling with the novel question of the appealability of a Chapter 23A fair market value order where the controversy was over how the fair market value order *might* impact partitionability. We would be faced with deciding a novel question of law in a factual vacuum. Even assuming the value was set at $605,619.00 as the result of error, parties would not yet have staked out positions on what the value should have been, nor would they have taken positions on how any difference in the dollar value of the fair market value actually impacted partitionability. Better, then, to let the passage of time force the "what if" to coalesce from ether into concrete reality.

15

And so the best thing and the quickest thing, and we would all be done and go home and don't have to spend another however many months dealing with commissioners and fighting over their recommendations is just if you ordered a sale, and the statute provides for an heirs' property that it's an open market sale, so it wouldn't be a sheriff's public auction, that wouldn't benefit anybody, but the Court would appoint a neutral real estate broker that's familiar with the local property area to list it, and you've already established the fair market value.

In sum, the question of sale-or-partition is at issue in our companion case. "The mootness doctrine—a constitutional limitation founded in the separation of powers between the governmental branches—prohibits courts from issuing advisory opinions." *Elec. Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 634 (Tex. 2021) (orig. proceeding). "[A] trial court's entry of a final judgment will often moot an interlocutory appeal or mandamus petition that challenges a prior trial-court order." *Id.* at 635. The situation at hand is not a preliminary order followed by a post-trial judgment. But it is closely akin. *See id.*

Atkinson's actual challenge regarding the impact of the FMV Order on partitionability is at issue in her second appeal. Therefore, I join in the dismissal for lack of jurisdiction. I respectfully concur to say that I would dismiss this appeal on grounds of mootness.

Jeff Rambin
Justice

Date Submitted:    January 6, 2025
Date Decided:      June 27, 2025

16